**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4590**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NASSER YUSEF MAHMOUD KHALAF,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (1:08-cr-00020-LHT-DLH-1)

Argued: May 11, 2010                    Decided: August 4, 2010

Before WILKINSON and DAVIS, Circuit Judges, and C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Grant Belser, BELSER & PARKE, Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Edward R. Ryan, Acting United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In May 2008, a jury found Nasser Yusef Mahmoud Khalaf guilty of immigration fraud and marriage fraud. The district court sentenced him to time served. On appeal, Khalaf claims the district court erred in denying his motions for acquittal, challenges the sufficiency of the evidence and also challenges the accuracy and sufficiency of the dates contained in the jury charge on each count. We affirm.

I.

On June 27, 2005, Khalaf, a Palestinian national residing in the West Bank, applied for a nonimmigrant visa to visit the United States. This visa enables the holder to visit the United States temporarily for pleasure or business. The purpose stated on Khalaf's application was to visit the United States to purchase clothing from APS Exports in Columbus, Ohio, for shipment to Palestine. The application indicated that APS would pay for his flight to, and accommodations in, the United States. Additionally, Khalaf answered the standard questions regarding whether his application was prepared by someone other than himself (the answer was "no"), and he certified that all of the information in the application was true and correct to the best of his knowledge. The application further indicated that he had previously been denied a visa on one prior occasion, when, in

2

fact, he had previously been denied twice. After questioning by a consular officer and after submitting a supplement to his application, Khalaf was granted a visa on August 5, 2005. Khalaf arrived in the United States on October 15, 2005.

At entry, Khalaf told the questioning immigration officer that he intended to travel to Asheville, North Carolina, and that he would stay at 68 Tunnel Road in Asheville, which was the address of a Subway restaurant. The officer gave Khalaf permission to remain in the United States on a B-2 visa for six months with no travel restrictions. The government later extended Khalaf's departure date to September 30, 2006.

Khalaf never went to Ohio during his time in the United States. He went immediately to Asheville and later began working at a Subway. Khalaf met Petra Babb toward the end of January 2006 when he hired Ms. Babb to work at the Subway. The two dated for several months and spent nearly every night together. Babb testified at trial that she recalled several occasions when Khalaf mentioned his visa expiration date and that "he needed to find somebody . . . to marry to stay in the country." Khalaf and Babb married on December 1, 2006.

Khalaf was previously married in Palestine and obtained a "revocable" divorce from Huda Khalaf on or about August 23, 2005, shortly before his departure from the West Bank. A revocable divorce in Palestine means that it can be rescinded at

3

a later time. According to the testimony of a United States Immigration and Customs Enforcement (ICE) officer, the United States government does not accept a revocable divorce as a final divorce. Ms. Khalaf, along with Khalaf's biological daughter, actually visited Asheville during the time Babb and Khalaf courted. Ms. Khalaf applied for a nonimmigrant visa on December 12, 2005, which was granted, and she first entered the United States in February 2006, remaining for approximately three months. Ms. Khalaf returned to Asheville on a nonimmigrant visa, along with her daughter, in October 2006. During her visits in the United States, Ms. Khalaf stayed at the same apartment complex where Khalaf resided. On April 4, 2007, Ms. Khalaf married Abdelaziz Ammar, a United States citizen.

Khalaf and Babb moved in together after their December 1, 2006, marriage. Subsequently Khalaf inexplicably and routinely would not return home about two to three nights each week. One month after the marriage Khalaf arranged to transfer employment to another Subway, "because it meant more money." So, once married, Babb and Khalaf no longer worked together. Early in 2007, Khalaf asked Babb if he could use her Medicaid card in order to get medical care for Ms. Khalaf who had been in an automobile accident. Khalaf also told Babb at this time that Ms. Khalaf was pregnant with Khalaf's second child. Babb then rented and moved into a subsidized apartment and decided not to

4

sponsor Khalaf on his green card application. Suddenly, Khalaf became "very kind," doing "anything for [her] that he could possibly do." On June 20, 2007, Babb signed and filed a petition for alien relative, seeking residency for Khalaf based upon the parties' marriage. The operative date in the indictment is July 11, 2007, which is the date Khalaf's petition for adjustment of immigration status was filed.

On December 6, 2007, an ICE agent arrested Khalaf on charges of overstaying his nonimmigrant visa and being employed without authorization. At the time of his arrest, Khalaf told the agent that prior to coming to the United States he talked with a friend who told Khalaf he could come to Asheville and work at Subway. Khalaf mentioned the APS business venture but explained that he had abandoned that plan when he learned that people in the West Bank would not wear that clothing. Also, when shown a copy of his application and his stated reason for obtaining the visa, Khalaf told the agent that he had never seen the application before but had gone to "a place that assists people in applying for Visas." As to his marriage to Babb, Khalaf claimed it was legitimate and that his relationship with Ms. Khalaf was "over." However, Khalaf spent the night before his arrest at Ms. Khalaf's residence. In Khalaf's pocket at the time of his arrest was a copy of a passport in the name of Abdelaziz Ammar (the name of the man Ms. Khalaf had married) and

5

Babb's North Carolina ID and driver's license, along with a copy of the front page of a residential lease for 25 North Ivey Street in the name of Ms. Khalaf and Abdelaziz Ammar.

Babb withdrew her petition for alien relative on December 13, 2007, following Khalaf's detention by immigration authorities and after her visit with an immigration agent.

At trial, Khalaf's version of events was that he intended to visit Ohio upon his arrival in the United States but went to Asheville first because a friend offered to assist Khalaf with translating. He explained that he divorced Ms. Khalaf before leaving the West Bank because she was angry he was not bringing her to the United States on the alleged business trip. He again claimed that he loved Babb and that their marriage was legitimate but testified that Babb drank heavily and did not always come home. Khalaf acknowledged visiting Ms. Khalaf frequently during her second visit in the United States but only because his daughter was with her. He admitted having sex only once with Ms. Khalaf, which resulted in pregnancy. Khalaf denied filling out his own nonimmigrant visa application and admitted that he had a tourist office, in the business of completing these applications for others, assist him. Khalaf did not sign his application, but claimed that he had read the application and that it was all true. As to the portion of his application stating that APS would pay for his travel and accommodations

6

during his United States visit, Khalaf testified he did not remember that part of the application, but that APS was *not* going to pay him for these expenses. Any mistakes on his visa application, he claimed, were the fault of the person who helped him prepare the application.

## II.

Following the government's evidence, and again at the close of all of the evidence, Khalaf moved under Federal Rule of Criminal Procedure 29 for dismissal due to insufficient evidence. We review the district court's denial of a Rule 29 motion for judgment of acquittal de novo. United States v. Kingrea, 573 F.3d 186, 194 (4th Cir. 2009); Fed. R. Crim. P. 29. We are obliged to sustain a guilty jury verdict "if, viewing the evidence in the light most favorable to the government, it is supported by substantial evidence." Kingrea, 573 F.3d at 194 (quotation omitted). This court "ha[s] defined substantial evidence as evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005) (internal quotation omitted). In conducting our review, we consider both circumstantial and direct evidence, drawing all reasonable inferences from such evidence in the government's favor. United

States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). Khalaf, as the defendant challenging the sufficiency of the evidence, "bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation omitted).

Here, the government presented circumstantial evidence that Khalaf obtained and used his nonimmigrant visa knowing that it was procured by means of a false claim or statement, as proscribed by 18 U.S.C. § 1546(a), and as charged in Count I. Section 1546(a) states:

> Whoever knowingly . . . utters, uses, attempts to use, possesses, obtains, accepts, or receives [any immigrant or nonimmigrant visa] . . . or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to . . . have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained [shall be fined or imprisoned].

18 U.S.C. § 1546(a).

Khalaf essentially argues that the jury failed to give proper weight to his testimony, but this court does not weigh evidence or review witness credibility. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Rather, it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). Here, stated in simplest terms, the jury did not believe Khalaf's version of events.

8

It is axiomatic that evidence of conduct *after* a statement is made can certainly bear upon the intent of the declarant at the time he made the statement. That is, Khalaf's conduct subsequent to his procurement of his nonimmigrant visa tended to prove the falsity of his statement that the intended purpose of his trip was to travel to Ohio to conduct business. Notwithstanding Khalaf's testimony that he had every intention of going to Ohio to further his business ventures at the time he applied for, and ultimately used, this nonimmigrant visa, we find that the evidence, when viewed in the light most favorable to the government, clearly supports the jury's finding.

Likewise there was sufficient evidence that Khalaf entered into the marriage with Babb for the purpose of evading a provision of the immigration laws, as charged in Count II. See 8 U.S.C. § 1325(c). A conviction under section 1325(c) requires the government to prove: (1) that the alien knowingly entered into a marriage; (2) the marriage was entered into for the purpose of evading a provision of the immigration laws; and (3) the alien knew or had reason to know of the immigration laws. United States v. Islam, 418 F.3d 1125, 1128 (10th Cir. 2005). Despite Khalaf's persistent attempts to focus our attention on *Babb's* belief in the legitimacy of her relationship with Khalaf at the time the two wed, Babb's state of mind is not at issue today. And, while Babb's subjective belief could be probative

9

of the issue regarding the marriage's legitimacy, it does not carry the day as Khalaf seems to argue, and certainly does not establish Khalaf's intent. After reviewing the record in the light most favorable to the government, we find the evidence presented clearly supports the jury's finding that Khalaf engaged in marriage fraud in violation of 8 U.S.C. § 1325(c).

Accordingly, we conclude that there is substantial evidence supporting the jury verdict on each count. The jury's conclusion that Khalaf never intended to further his clothing business, but rather carried out a carefully crafted course of action to use his marital status to attempt to alter his immigration status is supported by substantial evidence. Accordingly, the district court properly denied Khalaf's Rule 29 motions for acquittal.

## III.

Khalaf also challenges the dates charged to the jury on each count. He does not, however, challenge the legal sufficiency or validity of the indictment. We review for abuse of discretion a district court's rulings on jury instructions. United States v. Bolden, 325 F.3d 471, 486 (4th Cir. 2003). The reviewing court will not reverse "provided that the

10

instructions, taken as a whole, adequately state the controlling law." Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994).[*]

Particularly, the instructions charged that Khalaf engaged in visa fraud on or about October 15, 2005, the date Khalaf entered the United States, until December 6, 2007, the date of his arrest. The district court also instructed:

> The indictment charges that the offenses were committed on or about a certain date or dates. The proof need not establish with certainty, the exact date of the alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt, that the offense in question was committed on a date reasonably near the date alleged.

Khalaf claims this unnecessarily expanded the statutory offense, impermissibly suggested to the jury that the offense was a continuing one, and confused and misled the jury in violation of the Due Process Clause. If a crime was committed at all, claims Khalaf, it was when the application was made in Palestine, not four months later when he arrived in the United States.

Section 1546(a) states that whoever "uses, attempts to use, possesses, obtains, accepts, or receives" any "immigrant or nonimmigrant visa," knowing the visa "to have been procured by means of any false claim or statement" shall be fined or imprisoned not more than ten years in the case of a first

---

[*] Khalaf preserved his objections at trial regarding these instructions, contrary to the government's claim on appeal.

offense. 18 U.S.C. § 1546(a). Using the dates "on or about October 15, 2005, until on or about December 6, 2007," while not a model of clarity, adequately instructs the jury under the statute. Indeed, Khalaf used and possessed the nonimmigrant visa during the times charged. Therefore, the district court did not abuse its discretion when it allowed the "on or about" dates as charged on the visa fraud count.

As to the marriage fraud count, Khalaf claims the court abused its discretion when it included "on or about July 11, 2007" in the jury charge because that is the date he filed for adjustment of status and not the actual date of marriage, which was December 1, 2006, the only date Khalaf claims marriage fraud could occur. Here, too, Khalaf claims this inclusion was misleading and confusing in violation of the statute and denied him due process because it invited the jury to convict Khalaf for taking advantage of his legitimate but failing marriage to obtain a more favorable immigration status. The statute criminalizes "enter[ing] into a marriage for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(c). While the date of December 1, 2006, *could* have been included in the charging document and jury charge, allowing the date on which Khalaf relied upon that marriage to adjust his immigration status was not an abuse of discretion. It was on the later date that the purpose behind the sham marriage-evading

12

a provision of the immigration laws-revealed itself. Accordingly, the district court did not abuse its discretion. For the foregoing reasons, we affirm.

<u>AFFIRMED</u>