**CORRECTED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARLES LEO KINGREA,

*Defendant-Appellant.*

No. 08-5065

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Glen E. Conrad, District Judge.
(5:07-cr-00048-GEC-4)

Argued: March 27, 2009

Decided: May 28, 2009

Corrected Opinion Filed: July 20, 2009

Before WILLIAMS, Chief Judge,[1] and SHEDD and AGEE,
Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published
opinion. Judge Agee wrote the opinion, in which Judge Shedd
joined.

---

[1]Chief Judge Williams participated in the original decision but retired
prior to issuance of the corrected opinion. The corrected opinion is filed
by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Anthony Paul Giorno, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Julia C. Dudley, United States Attorney, Ashley B. Neese, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

**OPINION**

AGEE, Circuit Judge:

On September 18, 2007 a federal grand jury in the Western District of Virginia returned a true bill of indictment on four counts against Charles Kingrea alleging various crimes arising out of his involvement with a cockfighting operation in Page County, Virginia. At the close of the government's case Kingrea moved for judgment of acquittal on all four counts in the indictment on multiple grounds. The district court dismissed Count III but denied Kingrea's motion with respect to the other counts. The jury subsequently found Kingrea guilty on the three remaining counts.

At sentencing, the district court rejected the probation officer's recommended two-level reduction for acceptance of responsibility under Section 3E1.1(a) of the United States Sentencing Commission Guidelines Manual. The district court sentenced Kingrea to six months of incarceration followed by six months of home confinement and eighteen months of supervised release. Kingrea appeals the district court's denial of his motion for judgment of acquittal and the court's refusal to grant the two-level reduction under the advisory Sentencing Guidelines. For the reasons that follow we vacate Kingrea's conviction under one count of the indictment

and remand to the district court for resentencing. We affirm the district court's judgment in all other respects.

I.

On May 5, 2007 federal agents from the United States Department of Agriculture raided a cockfighting enterprise at a "cockpit" known as "Little Boxwood" in Page County, Virginia. For the past thirty years cockfighting derbies had been routinely held at Little Boxwood. Roosters often fought in contests where each rooster wore sharpened spurs, called gaffs, lashed to their heels. At the time of the 2007 raid, cock owners paid entrance fees of between $75 and $400 (part of which became the prize purse) while spectators paid $15 for admission to watch the cockfights. Spectators routinely gambled on the bouts.

Charles Kingrea was arrested during the raid on May 5th. Kingrea was neither an owner nor operator of Little Boxwood but was instead the proprietor of a makeshift retail stand where he sold various cockfighting supplies, including gaffs, vitamins, medicines, straps, string, adhesives, and knives. Although Kingrea had occasionally entered his own roosters in cockfights at Little Boxwood, he had last done so more than a year before the May 5, 2007 raid.

The raid occurred before the gaff derby scheduled for that day and Kingrea had only been selling his wares for a short time before the federal agents shut down Little Boxwood. Kingrea testified that his only sale on the day of the raid had been a strand of moleskin to a derby entrant; he had not yet sold any knives or gaffs although they were available for sale.

As a result of the Little Boxwood raid, a federal grand jury indicted Kingrea on four counts. Count I alleged that Kingrea participated in a conspiracy based on two predicate offenses: first, sponsoring or exhibiting "an animal fighting venture" in violation of 7 U.S.C. § 2156(a)(1), and second, conducting an

illegal gambling business involving cockfighting in violation of Virginia law and 18 U.S.C. § 1955. Count II charged Kingrea with conspiracy to "sell, buy, transport and deliver in interstate commerce a knife, a gaff or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture" in violation of 7 U.S.C. § 2156(e). Count III charged Kingrea with the substantive crime of aiding or abetting the sponsoring or exhibiting of "an animal fighting venture" in violation of 7 U.S.C. § 2156(a)(1). Count IV alleged that "as principals and/or aiders and abettors," Kingrea and others "did unlawfully and knowingly conduct . . . an illegal gambling business, said gambling business involving betting on cockfighting . . ." in violation of the laws of the Commonwealth of Virginia, 18 U.S.C. § 2, and 18 U.S.C. § 1955.

At the close of the government's case-in-chief Kingrea moved for judgment of acquittal pursuant to Rule 29 of the Rules of Criminal Procedure on several grounds: (a) that the government's evidence was insufficient, (b) that the grand jury failed to allege the statutory elements of the federal crimes in Counts I and III, (c) that the evidence failed to establish a violation of the Virginia statutes set forth in Counts I and IV, and (d) that the government failed to establish the necessary nexus with interstate commerce to support a conviction under Count II. The district court granted Kingrea's motion with respect to Count III but denied the motion in all other respects.

At the close of the case the district court instructed the jury as follows:

> I tell you that in order to reach a verdict of guilty as to Count One, the jury need only find beyond a reasonable doubt that the defendant conspired to engage in conduct which, if carried out, would violate one of these statutes, either Title VII United States Code Section 2156(a)(1) pertaining to animal

> fighting ventures or Title 18 United States Code Section 1955 pertaining to illegal gambling businesses.
>
> I charge you that Title VII United States Code Section 2156(a)(1) makes it a crime for anyone to knowingly sponsor or exhibit *an animal in* an animal fighting venture if any animal in the venture was moved in interstate commerce.

J.A. 235 (emphasis added).

The jury found Kingrea guilty on the three remaining counts and a presentence report was prepared. The probation officer responsible for preparing the presentence report recommended a two-point reduction in the base offense level under Section 3E1.1(a) of the United States Sentencing Guidelines for Kingrea's willingness to accept responsibility for his actions. Despite the government's lack of an objection, the district court found that Kingrea did not accept responsibility for his actions and rejected the probation officer's recommendation. In a sentence covering all counts of conviction, the district court ordered that Kingrea be incarcerated for six months followed by six months of home confinement and eighteen months of supervised release.

Kingrea timely appeals his convictions on each count and the district court's refusal to grant a two-point reduction under Section 3E1.1(a) of the Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3472(a)(2).

## II.

Count I of the indictment alleged that Kingrea violated 18 U.S.C. § 371 by conspiring with others to commit two distinct federal offenses:

> to knowingly sponsor and exhibit an animal fighting venture, in which any animal in the venture was

moved in interstate commerce, in violation of Title 7, United States Code, Section 2156(a)(1); and, to unlawfully, willfully and knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, said gambling business involving betting on cockfighting, in violation of the laws of the State of Virginia (Va. Code Ann. §§ 18.2-325(1), 326, 328, 329 & 330, and 3.1-796.125), in which illegal gambling business involved during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part thereof; and which gambling business remained in substantially continuous operation for a period in excess of thirty days, in violation of Title 18, United States Code, Section 1955.

Kingrea challenges his conviction for conspiracy under Count I by attacking the validity of each predicate offense. First, he argues that the indictment omitted one of the elements necessary for conviction under 7 U.S.C. § 2156(a)(1) and was therefore defective as a matter of law. Second, he avers that an exception contained in the Code of Virginia makes his conduct legal under Virginia law and therefore not in violation of 18 U.S.C. § 1955.

### A.

"Whether an indictment properly charges an offense is a matter of law which we may consider *de novo* if the defendant makes a timely objection to the indictment." *United States v. Darby*, 37 F.3d 1059, 1062 (4th Cir. 1994). When a criminal defendant challenges the sufficiency of an indictment prior to the verdict, we apply a heightened scrutiny. *Cf. Finn v. United States*, 256 F.2d 304, 307 (4th Cir. 1958) ("Indictments and informations are construed more liberally after verdict than before . . . ."); *United States v. Hooker*, 841 F.2d 1225, 1229 (4th Cir. 1988) (*en banc*) ("[I]n . . . cases where the objection

is made after verdict, the alleged deficiency is to be reviewed for validity under a more liberal standard and is not necessarily absolutely invalid.").

> As we have previously recognized, '[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.' *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)), *cert. denied*, ___ U.S. ___, 113 S.Ct. 1064 (1993)). Moreover, the indictment must include every essential element of an offense, or else the indictment is invalid; and mere reference to the applicable statute does not cure the defect. *Id.* at 274; *Hooker*, 841 F.2d at 1228; *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir.) (*en banc*), *cert. denied*, 488 U.S. 842 (1988).

*Darby*, 37 F.3d at 1063 (emphasis added).

### B.

7 U.S.C. § 2156(a)(1) provides that "[e]xcept as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit *an animal in* an animal fighting venture." 7 U.S.C.A. § 2156(a)(1) (West Supp. 2008) (emphasis added). However, Count I of the indictment in this case charged Kingrea as follows:

> the defendants, willfully and knowingly combined, conspired, confederated and agreed together, with each other and with diverse other persons known and unknown . . . to knowingly sponsor and exhibit *an animal fighting venture*, in which any animal in the venture was moved in interstate commerce, in viola-

tion of Title 7, United States Code, Section
2156(a)(1) . . . .

J.A. 16-17 (emphasis added). Kingrea argues that by omitting
the words "an animal in" from the indictment, the government
failed to set forth a necessary element of the offense charged,
which contravenes the Fifth Amendment requirement that an
indictment expressly charge all of the elements of the offense.[2]
Kingrea also argues that the district court's instruction to the
jury, which contained the statutory phrase omitted from the
indictment, was an impermissible constructive amendment.
Finding that our previous decision in *Hooker* controls, we
agree with Kingrea that the indictment against him was insuf-
ficient and that the district court's subsequent jury instructions
could not cure this fatal defect.

The elements of a crime under 7 U.S.C. § 2156(a)(1) are:
(1) knowingly, (2) sponsoring or exhibiting, (3) an animal in,
(4) an animal fighting venture, (5) in which any animal was
moved in interstate commerce. Thus, the act that Congress
has determined to be an unlawful act is the sponsoring of "an
animal in" an animal fighting venture, not simply sponsoring
a fighting venture. Omission of the element of "an animal in"
broadens the character of the crime beyond the scope of the
crime as Congress has defined it in the applicable statute.

The government does not dispute that it omitted the words
"an animal in" from Counts I and III of the indictment.
Instead, the government asserts that it was not required to
detail every element of the underlying substantive offense in

---

[2]The record indicates that one of Kingrea's co-defendants filed a motion
to dismiss Counts I and III (among others) on February 4, 2008, more than
four months before Kingrea's trial. In his motion, Kingrea's co-defendant
commented in a footnote that "the indictment omits part of the statutory
language, and charges that [Kingrea's co-defendant] conspired 'to know-
ingly sponsor and exhibit an animal fighting venture' rather than sponsor
'an *animal* in an animal fighting venture.'" For reasons not apparent in the
record, the government did not seek to obtain a superseding indictment.

Count I because it only alleged a conspiracy.[3] In other words, the government argues that it was required only to set forth in the indictment the elements of a conspiracy, which it did, regardless of whether all the elements of the criminal offense forming the object of the conspiracy were included.

The criminal defendant in *Hooker* was indicted on three charges of conspiracy, including "conspiracy to commit a RICO offense in violation of 18 U.S.C. § 1962(c) (1982)" ("the RICO count"). *Hooker*, 841 F.2d at 1226. Prior to and during the trial Hooker moved to dismiss the RICO count because it failed to contain an essential element of the offense – that "the business enterprise had an effect on interstate commerce." *Id.* The district court denied Hooker's motions and subsequently found him guilty on all counts. *Id.* On appeal to this Court, Hooker asserted that the failure of the indictment to include an essential element of the offense charged in the RICO count invalidated that count of the indictment and required its dismissal. *Id*. at 1227. Vacating his conviction on that count, we explicitly rejected the same contention made by the government here — that the indictment is constitutionally sound because it set forth all the elements of a conspiracy. We found no

> significance in the fact that [the conspiracy count] alleges a conspiracy rather than a substantive crime. Although an offense that is the object of a conspiracy need not be delineated in the indictment with the same particularity as a substantive offense, *Wong Tai v. United States*, 273 U.S. 77 (1927), this admonition applies to the statements of fact that 'flesh out' the indictment-not the basic elements of the offense

___

[3]The district court dismissed Count III, which charged Kingrea with the substantive offense, because the indictment omitted the necessary element of "an animal in" required by the applicable statute. The district court made a distinction, however, between the substantive charge of "aiding and abetting" in Count III and the conspiracy charge in Count I.

itself. *Nelson v. United States*, 406 F.2d 1136 (10th Cir. 1969).

841 F.2d at 1229.[4]

In *Hooker* we also rejected the government's position, made again in the case at bar, that an indictment's provision of adequate notice to the defendant cures any constitutional infirmity. "[A] sufficient indictment must contain the elements of the offense *and* apprise the defendant of the nature of the charge." *Hooker*, 841 F.2d at 1230. While the notice requirement is based on a defendant's "Sixth Amendment right to be informed of the nature and cause of the accusation," the requirement that all elements of the offense be present in the indictment "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." *Id.*

> The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. Const. Amend. V. After the indictment is "returned[,] its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 216 (1960). Thus, the "court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id.* at 217.

---

[4]In support of its position the United States relies on a decision from the Court of Appeals for the Third Circuit, *United States v. Werme*, 939 F.2d 108, 113 n.2 (3d Cir. 1991), which distinguished *Hooker*. *Werme* is unpersuasive and not controlling, as the Third Circuit has specifically rejected our interpretation of *Wong Tai* and held, contrary to *Hooker*, that "[c]onspiracy indictments need not allege all of the elements of the offense which the defendants are accused of conspiring to commit." *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979).

*United States v. Lentz*, 524 F.3d 501, 511 (4th Cir. 2008). Thus,

> even if we were to assume that [Kingrea's] notice emanated from the indictment . . . we would still be left with a document that did not contain any part of one element of the offense, and thus did not satisfy the Fifth Amendment requirement that all elements of the offense have been considered and found by the grand jury.

*Hooker*, 841 F.2d. at 1230 (citing *Stirone v. United States*, 361 U.S. 212 (1960)).

Put simply, the indictment against Kingrea failed to allege an essential element under § 2156(a)(1) of sponsoring or exhibiting "an animal in" an animal fighting event. In so doing, and contrary to the Government's assertion that it properly alleged the elements of a conspiracy to violate § 2156(a)(1), the indictment also failed to state an offense against the United States as the object of the conspiracy. This, of course, is a necessary and essential element of a conspiracy under 18 U.S.C. § 371, the conspiracy statute under which Kingrea was charged. *See* 18 U.S.C.A. § 371 (West 2000) ("If two or more persons conspire . . . to commit *any offense against the United States*, . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." (emphasis added)).

> Because the missing element in the present case was essential, its complete absence from [Count I] is a fatal defect. The [other] elements of [an] offense, as they were alleged in [Count I], do not by themselves state any federal crime, nor do they show that the grand jury found all elements of any federal crime.

*Hooker*, 841 F.2d at 1232 (original emphasis omitted).**[5]**

Moreover, the district court's subsequent jury instructions could not cure the fatal defect as we explicitly noted in *Hooker*.

> Neither instructions nor a petit jury verdict can satisfy after the fact the Fifth Amendment right to be tried upon charges found by a grand jury.

*Id.* at 1232 (emphasis added) (internal citations omitted).

We therefore conclude that Count I of the indictment omitted an essential element of the 7 U.S.C. § 2156(a)(1) conspiracy offense in violation of Kingrea's rights under the Fifth Amendment. We therefore vacate Kingrea's conviction on Count I of the indictment and his sentence.**[6]**

## III.

Count II of the indictment charged Kingrea with conspiring to violate 7 U.S.C. § 2156(e), a subsection of the Animal Welfare Act that became effective May 3, 2007, two days

---

**[5]**We note that in striking Count III of the indictment, which suffered from the same defect as Count I, the district court explained that "[Kingrea] thinks he's been charged with sponsoring an animal fighting venture. The statute criminalizes having an animal in an animal fighting venture." J.A. 170.

**[6]**The verdict on Count I was a general verdict as to both predicate offenses, conspiracy to sponsor an animal fighting venture and gambling. We need not conduct a review for harmless error, however, because it "is the Government that bears the burden of establishing that error was harmless." *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006). The government conceded at oral argument that in the event we found the indictment to be constitutionally infirm, the general verdict as to Count I must be set aside. Having so found we need not address Kingrea's arguments on the gambling predicate here although we do so regarding Count IV, *infra*.

before the raid on Little Boxwood and Kingrea's arrest.[7] The statute makes it "unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture." 7 U.S.C.A. § 2156(e) (West Supp. 2008).

At the close of the government's case Kingrea moved for judgment of acquittal as to Count II alleging that the government failed to prove that he knowingly sold, bought, transported or delivered gaffs or knives "in interstate or foreign commerce" in the two days between the effective date of the statute and his arrest at the Little Boxwood raid. The district court denied Kingrea's motion.

> We review *de novo* the district court's ruling on a motion for judgment of acquittal and we will uphold the verdict if, viewing the evidence in the light most favorable to the government, it is supported by substantial evidence. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation and citation omitted).

*United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008).

---

[7] Specifically, Count II charged that Kingrea and another

> willfully and knowingly combined, conspired, confederated and agreed together, with each other and with diverse other persons known and unknown to the Grand Jurors to commit the following offense against the United States, to wit: to knowingly sell, buy, transport and deliver in interstate commerce a knife, a gaff or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture, in violation of Title 7, United States Code, Section 2156(e).

The government argues that it was not required to prove Kingrea actually sold, bought, transported or delivered the prohibited items in interstate commerce, but only that at some point on or about May 5, 2007 he *conspired* with at least one other person to do so. The district court specifically acknowledged this distinction in response to Kingrea's motion:

> the evidence is that he sold these gaffs and knives to anyone who might be present at the fight . . . and we know a great number of those were from out of state.
>
>     . . . .
>
>     . . . [T]he count does not charge him with actually selling a gaff. It charges him with conspiracy to sell, buy, transport or deliver in interstate commerce.

J.A. 157-58.

Following the district court's denial of Kingrea's motion, Kingrea testified on cross-examination as follows:

> Q:  When you sold this stuff there, you made arrangements with Dale Moreland to set up your stand inside there, didn't you?
>
> A:  Dale was the runner of the pit, yes.
>
> Q:  So you went to him and made the arrangement and Dale allowed you to sell your stuff at the cockfighting pit.
>
> A:  Yes, but –
>
> Q:  When you were selling your stuff at the cockfighting pit, you sold it to the people from out of state; is that correct?

A:   Yeah.

Q:   You sold the gaffs and knives to people from out of state, is that correct?

A.   Yeah.

Q:   And you acquired your gaffs and knives not only from Virginia but from several other states, too, besides Virginia.

A:   Yes.

Q:   North Carolina?

A:   Yes.

Q:   Alabama?

A:   Yes.

Q:   Tennessee?

A:   Yes.

J.A. 195-96.

To establish a conspiracy under § 371, the Government must prove "(1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy." *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997). "The existence of a tacit or mutual understanding between conspirators is sufficient evidence of a conspiratorial agreement." *Id.* (internal quotation marks omitted). Proof of the agreement may be established by circumstantial evidence. *Burgos*, 94 F.3d at 857. It is no defense to a conspiracy charge that one's role in

> the conspiracy is minor. *See United States v. Laugh-man*, 618 F.2d 1067, 1076 (4th Cir. 1980) ("Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy." (internal quotation marks omitted)).

*United States v. Cardwell*, 433 F.3d 378, 390 (4th Cir. 2005).

Kingrea testified at trial that he had been going to Little Boxwood for over thirty years and had been selling his wares there for five years prior to the raid. According to Kingrea's own testimony, set forth above, he obtained permission from the manager of Little Boxwood, Dale Moreland, to sell his cockfighting supplies from a retail booth. He also admitted that he had purchased the gaffs and knives he offered for sale at Little Boxwood from various states and that he knowingly sold those items to people from outside Virginia. Kingrea also testified at trial that he knew cockfighting was illegal and that "the sole purpose of selling the gaff[s] and kni[ves]" was for use in cockfighting. J.A. 193-94. Finally, he stated that he was "open for business" on May 5th, 2007, the date of the raid by federal agents. J.A. 195.

The evidence plainly shows that Kingrea agreed with others to sell cockfighting paraphernalia such as gaffs and knives as part of the Little Boxwood operation. When Kingrea acquired inventory from other states prior to May 5, 2007, opened for business on that date, and offered the illegal items for sale to out-of-state customers, a reasonable factfinder could easily conclude that he committed multiple acts in furtherance of a conspiracy to "sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture." As Count II charged a conspiracy in lieu of the substantive crime, the

government was not required to prove that Kingrea actually sold a knife or gaff in interstate commerce, merely that he conspired to do so. The record is more than sufficient to show the district court did not err in denying Kingrea's motion as to Count II.

IV.

Kingrea also argues that the district court erred in refusing to grant his motion for judgment of acquittal as to Count IV of the indictment. Count IV alleged that Kingrea and his co-defendants

> as principals and/or aiders and abettors, did unlawfully, willfully and knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, said gambling business involving betting on cockfighting, in violation of the laws of the State of Virginia (Va. Code Ann. §§18.2-325(1), 326, 328, 329 & 330, and 3.1-796.125), in which illegal gambling business involved during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part thereof; and which gambling business remained in substantially continuous operation for a period in excess of thirty days.

J.A. 19.

Count IV was based on a violation of 18 U.S.C. § 1955, which prohibits a person from conducting, financing, managing, supervising, directing or owning an illegal gambling business. 18 U.S.C.A. § 1955(a) (West 2000). That statute defines an "illegal gambling business" as one that:

> (i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C.A. § 1955(b)(1) (West 2000).

Virginia law prohibits gambling, except in limited circumstances. Va. Code Ann. § 18.2-326 (2004).[8] Kingrea relies on one such exception set forth in Va. Code Ann. § 18.2-333 (2004), which provides, in pertinent part, that

[n]othing in this article [pertaining to illegal gambling] shall be construed to prevent any contest of speed or skill between men, animals, fowl or vehicles, where participants may receive prizes or different percentages of a purse, stake or premium dependent upon whether they win or lose or dependent upon their position or score at the end of such contest.

Va. Code Ann. § 18.2-333. Kingrea asserts that because cockfighting is a contest of skill between fowl, his conduct did not violate the law of Virginia, as required by 18 U.S.C. § 1955(b)(1)(i), and the district court thus erred in refusing to dismiss Count IV. We disagree.

Regardless of whether cockfighting is a game of skill or

---

[8]Va. Code 18.2-326 provides that

Except as otherwise provided in this article, any person who illegally gambles or engages in interstate gambling as defined in § 18.2-325 shall be guilty of a Class 3 misdemeanor. If an association or pool of persons illegally gamble, each person therein shall be guilty of illegal gambling.

chance, Va. Code Ann. § 18.2-333 does not apply to the acts for which Kingrea was charged and convicted under Count IV. The statute merely clarifies that participants in a contest of skill, where they may win a prize or purse, are not guilty of gambling. Nothing in the statute makes it lawful, however, for any person to wager on the outcome of such events. For example, Section 18.2-333 makes clear that drivers in the various professional motor vehicle races routinely held in Virginia are not gambling simply because they compete for a purse. Nothing in the statute, however, authorizes gambling on the outcome of the race by the drivers, race spectators or anyone else. Kingrea was charged with aiding and abetting the operation of a gambling business involving the betting on cockfights by spectators, and thus Va. Code Ann. § 18.2-333 is of no assistance to him. Insomuch as Va. Code Ann. § 18.2-326 makes gambling on cockfighting illegal, and thus encompassed within 18 U.S.C. § 1955(b)(1), Kingrea's statutory argument as to Count IV fails.

> To prove the crime of aiding and abetting the government must show that the defendant knowingly associated himself with and participated in the criminal venture. To prove the element of association, the government must show that the defendant shared in the principals' criminal intent. This requires evidence that the defendant be aware of the principals' criminal intent and the unlawful nature of their acts.

*United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983) (internal citations omitted). At trial, Kingrea testified on cross-examination that he knew that (1) cockfighting was illegal, (2) it was illegal to charge an admission fee to the cockfights at Little Boxwood and (3) illegal gambling was occurring at Little Boxwood. There was sufficient proof that through his activities at Little Boxwood, Kingrea knowingly aided and abetted the illegal gambling among spectators. Accordingly, the district court did not err in denying Kingrea's motion for acquittal as to Count IV.

## V.

For the foregoing reasons, we vacate Kingrea's conviction under Count I of the indictment, and his sentence, and remand to the district court for dismissal of that charge. We affirm the district court's judgment as to Kingrea's convictions on Counts II and IV, and remand to the district court for resentencing in view of vacating his conviction on Count I.[9]

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[9]In light of our decision to remand to the district court for resentencing, we need not address Kingrea's challenge concerning the district court's refusal to grant a two-point reduction for his "acceptance of responsibility" pursuant Section 3E1.1(a) of the United States Sentencing Commission Guidelines Manual.