**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4012

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHRISTOPHER GEORGE PERRY, f/k/a Christopher Parry,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:12-cr-00173-RDB-1)

Argued: March 20, 2014                 Decided: July 1, 2014

Before DUNCAN, AGEE, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Agee joined.

**ARGUED:** Heather H. Martin, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C., for Appellant. Sandra Wilkinson, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James D. Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

WYNN, Circuit Judge:

A federal jury convicted Christopher Perry of three counts of fraud related to his receipt of Social Security and healthcare benefits. On appeal, Defendant argues that the district court should have dismissed the indictment because it did not include essential elements of the fraud charges and was barred by the statute of limitations. In addition, Defendant contends that the government failed to prove that he engaged in a scheme or artifice to defraud the government. For the reasons that follow, we disagree and affirm the district court's judgment.

I.

In December 1995, Defendant applied for Social Security disability insurance benefits. In his application, Defendant agreed to report to the Social Security Administration ("SSA") if his medical condition improved such that he could work or if he returned "to work whether as an employee or a self-employed person." J.A. 454. SSA approved the application and found that Defendant had been eligible for disability benefits as of October 1, 1995. Sometime thereafter, in 1996 or 1997, Defendant started receiving payments.

Yet in 1996, Defendant began working at Macy's. And, with the exception of 2001 to 2004, he worked for a variety of

2

employers including Hertz Corporation, L&J Cleaning, and Nordstrom until 2007. In 1999, SSA sent Defendant a form requesting information about his employment, but there is no record of any response. In 1999 and 2000, SSA employees added notations to Defendant's file because Defendant's posted earnings in 1997 and 1998 were above the allowable income for benefits recipients.

In January 2006, Defendant began to receive fully subsidized prescription drug benefits under the Medicare Part D program. His eligibility was based on the SSA's understanding that Defendant's only income was from his Social Security disability benefits. Later, in August 2006, Defendant received a letter from Medicare seeking to verify that he was not receiving income from sources other than his Social Security disability benefits and thus continued to be entitled to benefits. Defendant did not respond to this inquiry.

In April 2007, Defendant applied for the Low Income Subsidy ("LIS") program. The LIS is an additional benefit for Medicare Part D beneficiaries that pays co-pays on expensive medicines for individuals with a "lack of income" and is based on an "official poverty determination." J.A. 774. In essence, it is "an extra layer of benefit" complementing Medicare Part D prescription drug benefits. J.A. 773. Despite being employed by Hertz at the time of his application, Defendant reported that

3

he "expect[ed] no earnings this year." J.A. 779. In addition, Defendant stated in his application that he was receiving no income other than Social Security disability.

In June 2007, Defendant was accepted into the Federal Career Intern Program, a two-year paid training program to become a Benefits Technical Examiner with the SSA. This job involved reviewing applications for disability benefits and compiling information regarding the eligibility of individuals for disability benefits. At the time, Defendant continued submitting claims for Medicare benefits during the period from June 2007 to 2009.

In July 2007, SSA's review of IRS records reflected that Defendant was receiving income. SSA thus sent Defendant a work activity report form asking about Defendant's employment history in March 2008. Defendant completed the form and returned it in July 2008, reporting some, but not all, of his employment from the previous years.

In 2009, SSA twice sent employment inquiries to Defendant to determine whether he was receiving any work-related expenses or subsidies from SSA. Then, SSA sent Defendant a letter advising him that his benefits would cease, but also that he could submit additional evidence about his employment status within ten days. Defendant failed to respond to these inquiries, and SSA then terminated his benefits.

4

In March 2012, the government charged Defendant in a three-count indictment with Social Security fraud, federal health benefit program fraud, and health care fraud. Defendant moved to dismiss the indictment, and the district court denied the motion but directed the government to file a bill of particulars "to delineate specifically the employment Defendant ha[d] failed to report." J.A. 132. The government responded by identifying Defendant's specific employers during the period that he was receiving benefits.

Defendant went to trial in September 2013. At the close of evidence, he moved for judgment of acquittal on the basis of the statute of limitations, but his motion was denied. The jury found Defendant guilty on all three counts. After the district court sentenced Defendant to concurrent terms of 24 months on Count One, 12 months on Count Two, and 24 months on Count Three, he appealed.

On appeal, Defendant argues that Counts One and Two of the indictment were unconstitutionally defective because they failed to specify the "event" that triggered his obligation to disclose his employment to the government; that the indictment failed to allege specific intent for all three counts; that the indictment failed to allege a scheme or artifice to defraud the government on Count Three; and that the indictment is time-barred by the statute of limitations. Defendant also challenges the

5

sufficiency of the evidence on Count Three. We address each argument in turn.

## II.

Defendant first contends that the district court erred in denying his motion to dismiss the indictment because Counts One and Two were unconstitutionally defective. "We review the district court's factual findings on a motion to dismiss an indictment for clear error, but we review its legal conclusions de novo." United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005).

"When a criminal defendant challenges the sufficiency of an indictment prior to the verdict,"—as Defendant did here—"we apply a heightened scrutiny" to ensure that every essential element of an offense has been charged. United States v. Kingrea, 573 F.3d 186, 191 (4th Cir. 2009). Specifically,

> [a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense. . . . [T]he indictment must include every essential element of an offense, . . . .

Id. (citations and quotation marks omitted); accord United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as

6

'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); accord United States v. Lockhart, 382 F.3d 447, 449 (4th Cir. 2004). However, any general description based on the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-18 (quotation mark omitted); see also Russell v. United States, 369 U.S. 749, 765 (1962) (noting that an indictment must "descend to particulars" where the definition of an offense includes generic terms (quotation marks omitted)). "Thus, the indictment must also contain a statement of the essential facts constituting the offense charged." United States v. Quinn, 359 F.3d 666, 673 (4th Cir. 2004) (quotation marks omitted).

In this case, Count One charges Defendant with Social Security fraud, in violation of 42 U.S.C. § 408(a)(4), and Count Two charges Defendant with federal health benefit program fraud, in violation of 42 U.S.C. § 1320a-7b. Both statutes penalize anyone who "conceals or fails to disclose" any event affecting his right to disability or health benefits and payments "with an

7

intent fraudulently to secure" greater benefits or payments than are due or when no benefit or payment is authorized. 42 U.S.C. § 408(a)(4); 42 U.S.C. § 1320a-7b(a)(3).

Count One of the indictment charged that Defendant, from about 1996 through about September 2009,

> having knowledge of the occurrence of any event affecting his initial or continued right to any payment under Subchapter II of Title 42 (Disability Insurance Benefits), did conceal and fail to disclose said events with intent to fraudulently secure payment in a greater amount than is due and when no payment is authorized; to wit, the defendant concealed and failed to disclose his employment and earnings to the Social Security Administration.

J.A. 14. Similarly, Count Two charged that Defendant, from about April 1998 through about September 2009,

> having knowledge of the occurrence of any event affecting his initial and continued right to any benefit and payment under a federal health care program, did conceal and fail to disclose said event with intent to fraudulently secure such payment and benefit in a greater amount and quantity than is due and when no such benefit and payment is authorized; to wit, the defendant concealed and failed to disclose his employment and earnings to Medicare.

J.A. 15.

Further, the indictment identified Defendant's employment history, starting in 1996 and continuing through the charged time period, as the "event" that triggered his disclosure obligations and alleged that Defendant's concealment and failure to disclose this employment constituted the criminal conduct. Specifically, the indictment alleged that Defendant "was

8

employed but did not report his employment to the SSA or to Medicare despite the fact that his employment would affect his eligibility for, and the amounts he was eligible to receive from, these federal benefit programs." J.A. 12. The indictment also stated that Defendant "knew that employment is an event affecting his continued right to [Social Security Disability] and Medicare benefits and he concealed and failed to disclose such events with a fraudulent intent . . . ." J.A. 13.

We agree with the district court that this indictment was sufficient to apprise Defendant of the charges against him and identify the essential elements of the crimes charged. The indictment tracked the statutory language, provided specific details about the nature of the charges, and identified the "event" triggering Defendant's disclosure obligations. Defendant has shown, and we have found, nothing requiring the government to list each specific job Defendant held during this period as a basis for charging him with these fraud crimes. Further, the government clarified any confusion by filing a bill of particulars providing Defendant with specific notice of each job within his employment history that served as the "event" in the indictment. We therefore conclude that the indictment here was sufficiently specific to pass constitutional muster.

9

III.

Defendant also argues that the government failed to allege specific intent to defraud, an essential element of each crime, for all the counts in the indictment.  We review this issue de novo.  Woolfolk, 399 F.3d at 594.

Defendant rightly notes that every essential element of an offense must be charged.  See Kingrea, 573 F.3d at 191.  And intent to defraud is an element here.  Fatally for Defendant's argument, however, his indictment charges it.

Specifically, in Count One, the government alleged that Defendant "did conceal and fail to disclose said events with intent to fraudulently secure payment in a greater amount than is due and when no payment is authorized; to wit, the defendant concealed and failed to disclose his employment and earnings to the Social Security Administration."  J.A. 14.  Similarly, in Count Two, the government alleged that Defendant "did conceal and fail to disclose said event with intent to fraudulently secure such payment and benefit . . . to wit, the defendant concealed and failed to disclose his employment and earnings to Medicare."  J.A. 15.

The other portions of the indictment provide details and allege that Defendant knew he was required to report his employment, failed to do so, and received benefit payments and benefits during that time.   In Count Three, the government

10

directly charges that Defendant "did willfully execute and attempt to execute a scheme and artifice to defraud a federal health care benefit programs [sic], that is, Medicare, to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare, . . . ." J.A. 16. These allegations plainly charge Defendant with the specific intent to defraud that is required for the pertinent crimes.

Defendant nevertheless presses that the indictment alleges only "passive non-disclosure of employment by a recipient of Social Security benefits" rather than affirmative concealment of material facts and that these allegations are insufficient to sustain the fraud charges. Appellant's Br. at 32. In support of this argument, he relies heavily on United States v. Phillips, 600 F.2d 535 (5th Cir. 1979). But Defendant's reliance on that case is misplaced—not least because Phillips is not about the sufficiency of an indictment, but is instead a challenge to the sufficiency of the evidence. There, the Fifth Circuit decided that the government had provided insufficient evidence of the defendant's fraudulent intent by failing to show that the defendant knew he was not entitled to benefits or adducing evidence of the defendant's "devious" behavior such that the jury could infer Phillips's fraudulent intent. Phillips, 600 F.2d at 538-40. Here, the relevant question is

11

whether the government charged that Defendant committed fraud by intentionally concealing his employment. Phillips has minimal application in the context of Defendant's challenge to his indictment.

In sum, the indictment charged the requisite intent. We, therefore, reject Defendant's argument that the government failed to allege specific intent to defraud.

IV.

Defendant also argues that the district court erred in denying his motion to dismiss the indictment as time barred under the statute of limitations. We review this issue de novo because the district court's decision depended solely on a question of law. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir. 1993).

It is undisputed that there is a five-year statute of limitations for the fraud offenses at issue here. See 18 U.S.C. § 3282(a) (setting forth general five-year statute of limitations for non-capital crimes). The Supreme Court has recognized that "'[s]tatutes of limitations normally begin to run when the crime is complete.'" Toussie v. United States, 397 U.S. 112, 115 (1970) (quoting Pendergast v. United States, 317 U.S. 412, 418 (1943)). "Criminal acts over an extended period, however, may be treated as a 'continuing offense' for

12

limitations purposes when a criminal statute explicitly compels that result, or if 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" United States v. Smith, 373 F.3d 561, 563-64 (4th Cir. 2004) (per curiam) (quoting Toussie, 397 U.S. at 115).

In this case, Defendant moved to dismiss the indictment, which was filed in March 2012, as time-barred because some of the charged conduct occurred before March 2007. The district court denied the motion and ruled that "here there is no limitations in this case . . . as to Counts 1 and 2, much of which charged is clearly within the five-year period, anyway, and as to those matters before, the doctrine of continuing offenses would apply with respect to any limitation issue." J.A. 85. The district court then issued a memorandum reiterating that the charged offenses were continuing offenses and that "the defendant's continued concealment constitutes a 'course of conduct' that affects his remaining rights going forward, and the course of conduct—failing to report—is that act which constitutes the violation." J.A. 131-33.

Defendant does not challenge the determination that these crimes are continuing offenses for statute of limitations purposes. See Appellant's Br. at 35 n.3 ("Perry accepts for the purposes of this discussion the district court's determination

13

that the charged offenses are continuing offenses."). Instead, Defendant contends, as he did in his post-trial Rule 29 motion, that the limitations period began to run not when the continuing offenses were complete, but instead in 1999 when the government knew of, or could have discovered, Defendant's non-disclosure.

Defendant has pointed to no binding precedent applying such a discovery rule in a case like this, nor have we found any. Instead, Defendant attempts to rely on a Fourth Circuit civil forfeiture case and some easily distinguishable out-of-circuit immigration offense cases. United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) (involving civil forfeiture statute that states that the action must be commenced within "'five years after the time when the alleged offense was discovered[.]'" (emphasis added) (quoting 19 U.S.C. § 1621)); United States v. DiSantillo, 615 F.2d 128, 134-36 (3d Cir. 1980) (differentiating between the crime of entry through "regular immigration service procedures" and the crime of "being found in the United States when the alien did not enter . . . through an INS port of entry" and deeming "illegal entry through a recognized INS port" crime not a continuing offense); United States v. Gomez, 38 F.3d 1031, 1037-38 (8th Cir. 1994) (deeming crime of being "found in" the United States under 8 U.S.C. § 1326 a continuing offense). Aside from the fact that this case involves a clearly different statute of limitations from the one

14

analyzed in Kivanc, both DiSantillo and Gomez focused on the government's ability to discover a defendant's entry to the United States as the basis to distinguish illegal reentry violations under 8 U.S.C. § 1326 and determine whether those violations are continuing offenses. We refuse to shoehorn these round pegs into the square hole that is this case and, accordingly, reject Defendant's argument.

V.

Defendant challenges the sufficiency of the indictment on Count Three. The parties disagree about the appropriate standard of review, with Defendant arguing for de novo and the government arguing for plain error. We need not resolve this dispute because Defendant cannot prevail, even under the de novo standard.

Count Three charged Defendant with violating 18 U.S.C. § 1347. That statute penalizes health care fraud, which is committed by anyone who

> knowingly and willfully executes, or attempts to execute, a scheme or artifice-- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, . . . .

18 U.S.C. § 1347(a). As with Counts One and Two, the indictment tracked the language of the statute and directly alleged that

15

Defendant "execute[d] a scheme and artifice to defraud . . . Medicare[.]" J.A. 16.

The government premised its theory regarding Defendant's "scheme and artifice to defraud" on three particular allegations: 1) Defendant was employed at "the Social Security Administration, Hertz Corporation, L&J Cleaning, Macy's . . . and other businesses while he was receiving [Social Security Disability] and Medicare benefits[;]" 2) Defendant "personally profited from the scheme to defraud Medicare by obtaining prescription drugs and not having to pay for the drugs and/or make a co-payment[;]" and 3) Defendant "made false statements in documents regarding his employment." J.A. 16. Throughout the indictment, the government alleged that Defendant "concealed and failed to disclose" his employment while continuing to accept benefits and payment. J.A. 12-17. Also, the government alleged that Defendant applied for and received the Low Income Subsidy to assist him in paying for his prescription drugs, in addition to his Medicare Part D prescription drug benefits. It further alleged that in his LIS application, despite being employed at the time, Defendant stated that "I expect no earnings this year." J.A. 12. Defendant points to nothing requiring the government to provide further factual allegations in the indictment to support the alleged scheme and artifice to defraud

16

in Count Three.  And we find nothing.  Accordingly, we reject this argument.

VI.

Finally, Defendant challenges the sufficiency of the government's evidence on his healthcare fraud conviction.  The standard for reversing a jury verdict of guilty is a high one: the Court does so only "where the prosecution's failure is clear."  United States v. Foster, 507 F.3d 233, 244–45 (4th Cir. 2007) (quotation marks omitted).  That is because "the appellate function is not to determine whether the reviewing court is convinced of guilt beyond reasonable doubt, but, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, 'whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt.'"  United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc) (quoting United States v. Powell, 469 U.S. 57, 67 (1984)).  The "jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it," where substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v.

17

Young, 609 F.3d 348, 355 (4th Cir. 2010) (quotation marks omitted).

To convict Defendant for healthcare fraud, the government must prove that he "knowingly and willfully execute[d] . . . a scheme or artifice-- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by . . . any health care benefit program . . . ." 18 U.S.C. § 1347(a). See also Kivanc, 714 F.3d at 795 (same). "[T]he specific intent to defraud may be inferred from the totality of the circumstances and need not be proven by direct evidence." United States v. McLean, 715 F.3d 129, 138 (4th Cir. 2013) (quotation marks omitted).

In considering whether there existed a scheme to defraud, we must look to the "common-law understanding of fraud[,]" which we have interpreted to include "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent[] the other [party] from acquiring material information.'" United States v. Colton, 231 F.3d 890, 898 (4th Cir. 2000) (quoting Restatement (Second) of Torts § 550 (1977)) (interpreting the scope of a scheme or artifice to defraud under 18 U.S.C. § 1344, the bank fraud statute); see also United States v. Beverly, 284 F. App'x 36, 39 (4th Cir. 2008) (unpublished but orally argued) (per curiam) (interpreting the

18

scope of a scheme or artifice to defraud under 18 U.S.C. § 1347, the health care fraud statute).

"Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does." Colton, 231 F.3d at 899. Almost surely for this reason, the Eighth Circuit upheld a health care fraud guilty verdict in United States v. Phythian, 529 F.3d 807 (8th Cir. 2008). In that case, which we find illuminating, the government's evidence showed that the defendant had worked, that SSA had advised the defendant of her duty to report any work, and that the defendant nevertheless failed to report her work while continuing to receive benefits. Based on these facts, the Eighth Circuit held that "[r]eviewing the evidence in the light most favorable to the verdict, a reasonable jury could readily find [that Defendant] Phythian violated § 408a(4)." Id. at 812.

Here, the jury had notably more evidence to support its verdict than did the jury in Phythian. Specifically, the government's evidence showed that Defendant knew he had a duty to report any employment to SSA. Indeed, in his application for benefits that reflected, Defendant agreed to "promptly notify Social Security if my medical condition improves so that I would be able to work . . . [or] I go to work whether as an employee

19

or a self-employed person." J.A. 453-54. See also, e.g., J.A. 630 (reflecting that SSA's letter to Defendant explicitly stated that "if you have applied for or are receiving Social Security benefits, you are responsible for immediately notifying your local Social Security Office of your employment because your income may affect your benefits").

The government showed the materiality of Defendant's employment status as it related to his Social Security benefits— i.e., that Defendant's benefits would have been affected and likely terminated had he informed SSA about his employment. Further, the government presented evidence that Defendant's job with the SSA as benefits technical examiner included training on the receipt and termination of benefits, including that benefits may be reduced, suspended, or terminated upon employment and receipt of income.

At trial, Defendant's SSA supervisor agreed that Defendant worked on cases involving people who were working and receiving disability payments. J.A. 738. And the government sent Defendant several documents requesting employment information and reiterating Defendant's disclosure obligations in 1999, 2006, and 2008, but Defendant failed to disclose any of his employment until returning a work activity report in July 2008. This report corroborated the fact that Defendant had been employed while receiving benefits and supported SSA's decision

20

to terminate his benefits. Further, the response was incomplete because Defendant omitted from his work history employment for which there were no tax records. Compare S.J.A. 1-14 (work activity report) with J.A. 801 (Defendant's reference to Carla and Company position in 2002 credit application), S.J.A. 16, 18 (Defendant's reference to L&J Services position in 2005 Hertz application and resume).

In addition, the evidence showed that Defendant continued receiving the LIS to supplement his Medicare prescription drug benefits in 2007 and 2008 while he was employed with SSA. He received over four thousand dollars worth of LIS benefits during that time. And, while working at SSA, Defendant continued to cash government disability checks totaling "a little bit less than $15,000." J.A. 795-97.

In sum, the government presented sufficient evidence for a rational jury to find that Defendant engaged in a health care fraud scheme. Accordingly, his conviction must be affirmed.

VII.

For the foregoing reasons, we hold that the district court properly denied Defendant's motion to dismiss the indictment and motion for judgment of acquittal. Therefore, the district court's judgment is

AFFIRMED.

21