**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-4272**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHNATHAN CRAWFORD,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:23-cr-00128-D-BM-1)

───────────

Argued:  May 15, 2025                    Decided:  September 10, 2025

───────────

Before DIAZ, Chief Judge, NIEMEYER, and BERNER, Circuit Judges.

───────────

Affirmed by unpublished opinion. Judge Berner wrote the opinion, in which Chief Judge Diaz and Judge Niemeyer joined.

───────────

**ARGUED:**  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

BERNER, Circuit Judge:

Johnathan Crawford pleaded guilty to the federal crime of escape from custody pursuant to a plea agreement. After entering his plea, Crawford submitted objections to various statements in his Presentence Investigation Report. Although Crawford refused to provide support for his objections, he maintained them during his sentencing hearing in spite of repeated suggestions by the district court that they be withdrawn. Crawford expressed concern that certain statements in the Presentence Investigation Report, left without objection, might be viewed as admissions in state court proceedings on separate felony charges. Although the Government and Crawford jointly recommended a sentence of 39 months' imprisonment, the district court imposed a 60-month sentence, the maximum statutory term.

Crawford argues that, in objecting to statements in the Presentence Investigation Report, he was invoking his Fifth Amendment right against self-incrimination and that the district court imposed the maximum statutory sentence in retaliation for his having done so. In support of his argument, Crawford points to certain remarks made by the district court during the sentencing hearing. Because we find no nexus between Crawford's alleged invocation of the right against self-incrimination and the sentence imposed by the district court, we affirm.

I.     Background

In September 2022, Jonathan Crawford was transferred from prison to a halfway house in Fayetteville, North Carolina. At the time, Crawford was serving a 77-month

3

sentence for distribution and possession with intent to distribute cocaine. Several months after he was transferred, in late November 2022, Crawford was granted a 52-hour pass from the halfway house to stay temporarily at the home of his then-girlfriend, C.G.[1] C.G. was not at home when Crawford arrived. Upon her return, the two had a disagreement and Crawford pulled out a firearm and shot C.G. in the arm. The bullet went through C.G.'s forearm and lodged in her abdomen.

Crawford transported C.G. to a hospital for treatment of the gunshot wound, but only after she agreed that she would not contact the police.[2] Crawford left C.G. at the hospital and fled. After the hospital reported to the police that a shooting victim was being treated, several police officers arrived to investigate. They interviewed C.G. and she told them what had taken place. One of the officers then proceeded to C.G.'s home. There he discovered bullet holes in a door and a window. The police officers next contacted the halfway house in search of Crawford and, when he could not be located, Crawford was officially designated as escaped.

Crawford remained at large for several months. During this time, he called C.G. 98 times in a single day. He threatened to shoot her and "shoot up" her home if she continued to cooperate in the state's criminal investigation of the shooting. The following March, the police received a tip that Crawford was staying at a residence in South Carolina. Following

---

[1] We refer to Crawford's girlfriend at the time as C.G. to protect her anonymity.

[2] At the hospital, C.G. learned that she was pregnant. C.G. subsequently gave birth and the child suffered no ill-effects as a result of the shooting.

up on the tip, the police discovered Crawford at the residence and arrested him. Crawford was indicted for escaping from federal custody pursuant to 18 U.S.C. § 751(a).

On July 27, 2024, Crawford appeared before a magistrate judge for a hearing in accordance with Federal Rule of Criminal Procedure 11. During the hearing, the magistrate judge asked Crawford whether he understood the terms of his plea agreement, including the appellate waiver. The magistrate judge confirmed Crawford understood that, by signing the plea agreement, he was "giving up [his] right to appeal or otherwise challenge [his] conviction or sentence on any ground other than ineffective assistance of counsel or prosecutorial misconduct." J.A. 29. The prosecutor set forth the factual basis for the plea and Crawford pleaded guilty to the escape charge.

A United States Probation Officer filed a draft Presentence Investigation Report (draft PSR), to which Crawford submitted four written objections. Crawford's objections primarily pertained to statements in the draft PSR that relied on C.G.'s accounts that Crawford shot her and later threatened her for cooperating with the police. Crawford asserted that C.G.'s statements were "unreliable." J.A. 39. Crawford also objected to the draft PSR's recommendation that the district court impose a 2-level obstruction-of-justice enhancement because that recommendation was based largely on C.G.'s statements. Finally, Crawford objected to the draft PSR's recommendation of an upward departure from the Sentencing Guidelines range.

Upon reviewing the objections, the Probation Officer finalized the Presentence Investigation Report (final PSR). It detailed Crawford's extensive criminal history, including multiple convictions for crimes of violence. In the final PSR, the Probation

Officer recommended a sentencing enhancement for obstruction of justice and suggested a Guidelines range of 18 to 24 months' imprisonment. The Probation Officer also recommended an upward variance from this range because Crawford used a weapon or dangerous instrumentality in the commission of the offense.

The Government agreed that an upward variance was warranted because Crawford used a dangerous weapon, attempted to obstruct justice, and caused a serious injury. The Government recommended a sentence of 39 months' incarceration. Crawford conceded that an upward variance was appropriate. Although he joined the Government in its recommendation of a 39-month sentence, Crawford maintained his objections to the aspects of the final PSR that relied upon statements C.G. had provided to the police.

When questioned by the district court about his objections, Crawford responded that he did not want to be heard on the objections, but he nevertheless declined to withdraw them. Crawford told the district court that he could not withdraw his objections "because of the pending nature of the state charges . . . [he] did not want to have it be viewed as an admission by the State Court." J.A. 46–47. In considering the objections, the district court recounted Crawford's offense conduct in detail and asked the Government if it wished to introduce any additional evidence. The Government and the law enforcement agent present at the hearing both confirmed their position that the information in the PSR was accurate. The district court expressed frustration that Crawford "persisted" in maintaining his objections to the final PSR. J.A. 50. Although at one point during the hearing the district court seemed to recognize that Crawford was maintaining his objections to the final PSR because of pending state criminal charges against him, stating "I get the pending charges,

6

fine," the district court nevertheless deemed the objections as a "waste of time" and overruled them. J.A. 60.

After hearing from the parties, the district court explained the basis for its sentence. The district court discussed at length facts relevant to the factors set forth in 18 U.S.C. § 3553(a) (the Section 3553(a) factors). The district court reviewed Crawford's extensive criminal history, including multiple convictions for crimes of violence, stating that this history demonstrated Crawford had chosen to "live as a criminal." J.A. 70. The district court expressed concern that, because of this criminal history, Crawford would continue to victimize others if he was released from custody. The district court considered the egregious nature of Crawford's actions and concluded that an upward departure from Crawford's Guidelines range was warranted. The district court noted that Crawford used a dangerous weapon, obstructed justice, and had caused serious injury. It therefore concluded that the maximum possible sentence of 60 months' imprisonment was appropriate. *See* 18 U.S.C. § 751(a); U.S.S.G. §§ 5K2.6, 5K2.2. Notably, in explaining the basis for its sentence, the district court never referenced Crawford's objections to the final PSR.

During sentencing, the district court also made a number of remarks about Crawford's life and character that Crawford argues were unsupported by the record. For example, the district court described Crawford as not having "done one redeeming thing in the entire time he has drawn a breath on this earth . . . ." J.A. 56. Further, the district court labeled Crawford as "a sociopath," calling him "a felon to his core" and stating that "there's really nothing in [Crawford's] adult life that I can see that he's ever done productively." J.A. 57, 61. The district court also commented negatively on Crawford's role as a father,

7

proclaiming that "Crawford has brought many children into the world [and] has failed each of them spectacularly and pathetically." J.A. 76.

Crawford timely appealed his sentence.

## II.      Standard of Review

Crawford and the Government dispute what standard of review we should apply. Crawford argues that the district court committed a constitutional violation by punishing him for invoking his Fifth Amendment right against self-incrimination. Thus, according to Crawford, we must apply *de novo* review. *See United States v. Lara*, 850 F.3d 686, 690 (4th Cir. 2017) (reviewing whether the Government violated a defendant's Fifth Amendment right *de novo*). The Government contends that Crawford never raised a Fifth Amendment claim below, and therefore we must review the district court's sentencing decision for plain error. We need not resolve this dispute, because Crawford cannot prevail under either standard. *See United States v. Perry*, 757 F.3d 166, 174 (4th Cir. 2014). Thus we review Crawford's appeal *de novo. Id.*

## III.      Analysis

As a threshold matter, the Government argues that Crawford's appeal should be dismissed because he waived the right to challenge his sentence in his written plea agreement. Certain claims are carved out from valid appellate waivers, however. *See e.g., Garza v. Idaho*, 586 U.S. 232, 238 (2019) ("[N]o appeal waiver serves as an absolute bar to all appellate claims."); *United States v. Carter*, 87 F.4th 217, 225–27 (4th Cir. 2023).

8

Our court has yet to resolve the question of whether a valid appellate waiver bars a challenge to a sentence imposed allegedly in violation of the Fifth Amendment. In *Carter*, we assumed without deciding that a similar challenge was not barred. *Id.* at 225–26. We take the same tack and assume Crawford's appellate waiver did not bar his challenge, reserving the question of the scope of waiver for another day.

We turn now to Crawford's claim that the district court retaliated against him because he invoked his right against self-incrimination. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. An individual cannot be compelled "to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

When questioned at sentencing about the basis for his objections to the final PSR, Crawford indicated that he was maintaining his objections "out of an abundance of caution, [so as not] to have it be viewed as an admission by the State Court." J.A. 46–47. The district court expressed frustration during the sentencing hearing that Crawford "persisted" with his objections without offering support. J.A. 46. While the record is murky as to whether Crawford's objections can be understood as an invocation of his Fifth Amendment right against self-incrimination, the record is devoid of evidence suggesting that the district court imposed the maximum sentence in retaliation for Crawford maintaining his objections. To the contrary, in imposing Crawford's sentence, the trial court conducted an individualized assessment of the relevant sentencing factors based on the facts, as it was required to do.

9

*United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)).

In sentencing a criminal defendant, district courts are required to consider the Section 3553(a) factors, including the nature of the offense, the defendant's history, the need for the sentence imposed, the kinds of sentences available, the Guidelines range, relevant policy statements by the Sentencing Commission, the need to avoid unwarranted disparities, and the need to provide restitution to any victims. *See*, *e.g., Gall*, 552 U.S. at 50–51. Crawford criticizes the district court's application of these factors. He argues that the manner in which the district court applied them demonstrates that the district court imposed the maximum statutory sentence in retaliation for his invoking the right against self-incrimination. We disagree.

The district court's application of the Section 3553(a) factors to Crawford's case was fully consistent with statutory requirements and this court's precedent. *See Blue*, 877 F.3d at 518. In sentencing Crawford, the district court addressed the violent nature of Crawford's offense, including his procuring a gun, shooting C.G., and threatening further violence against her, all while on a pass from a halfway house. The district court further noted that Crawford escaped from custody and remained at large for over three months while he should have been completing a sentence for other serious crimes. The district court described in detail Crawford's lengthy criminal history. It then considered the Guidelines range and determined that an upward departure was warranted because Crawford used a dangerous weapon in the commission of the offense, caused significant physical injury, and obstructed justice.

10

Crawford also contends that certain comments the district court made about him during the sentencing hearing mischaracterized the record. Crawford points to these statements as further evidence in support of his argument that the district court retaliated against him for allegedly invoking his Fifth Amendment right. Here too, we disagree. While the district court's comments were harsh, they were untethered to the district court's sentencing analysis and do not suggest that the sentence was imposed in retaliation for Crawford's alleged Fifth Amendment invocation.[3]

The district court expressed frustration with Crawford's refusal to defend his objections to the PSR. The record does, however, not support Crawford's claim that the district court retaliated against him for invoking his Fifth Amendment right against self-incrimination. Crawford points to no nexus between his alleged invocation and the district court's imposition of the maximum statutory sentence, nor can he. The record demonstrates that, in imposing Crawford's sentence, the district court properly focused on the nature and circumstances of the offense, Crawford's significant criminal history, and the other Section 3553(a) factors.

## IV.    Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

*AFFIRMED*

---

[3] Crawford does not allege that the district court's remarks, on their own, warrant setting aside his sentence.

11