**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 16-4522**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BETH PALIN,

Defendant - Appellant.

---

**No. 16-4540**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSEPH D. WEBB,

Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, District Judge. (1:14-cr-00023-JPJ-PMS-1; 1:14-cr-00023-JPJ-PMS-2)

---

Argued: September 13, 2017                                    Decided: October 30, 2017

---

Before MOTZ, DUNCAN, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Duncan and Judge Wynn joined.

---

**ARGUED:** Michael John Khouri, LAW OFFICES OF MICHAEL KHOURI, Laguna Hills, California; Nancy Combs Dickenson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellants. Janine Marie Myatt, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant Joseph D. Webb. Rick A. Mountcastle, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

After a bench trial, the district court found Beth Palin and Joseph Webb (wife and husband) guilty of health care fraud and conspiracy to engage in health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349. Palin and Webb appeal, principally contending the district court failed to apply the correct standard of materiality and failed to find their misrepresentations were material. For the reasons that follow, we affirm.

I.

During a two-week trial, the district court considered numerous documents and the testimony of more than twenty witnesses. We briefly summarize that evidence.

Palin owned Mountain Empire Medical Care ("MEMC"), an addiction medicine clinic, and Bristol Laboratories ("the Lab"), which processed urine drug tests ordered by MEMC doctors, among others. Webb assisted Palin in the operation of both facilities.

The Lab performed two types of urine tests: the basic, inexpensive "quick-cup" test and a more sophisticated, more expensive "analyzer" test. Although referring doctors ordered their patients to undergo drug tests, the doctors did not specify the type of test. Palin and Webb made that decision, instituting procedures in which insured patients were treated differently than uninsured patients. In general, uninsured patients paid cash and received one test each week — the "quick-cup" test. Insured patients received both the "quick-cup" and the more expensive "analyzer" test. The Lab billed insurers (which included Medicare and private insurance companies) for the sophisticated test.

3

In a detailed written opinion, the district court found Palin and Webb "knowingly and willfully executed a scheme to defraud health care benefit programs" in violation of §§ 1347 and 1349. The court found that performing additional, weekly, expensive tests for insured patients was not medically necessary; that insurers have rules prohibiting providers from submitting claims for unnecessary tests; and that Palin and Webb knew the additional tests were unnecessary but hid that fact when billing the insurers. The court, however, did not expressly mention materiality.

Palin and Webb then moved for judgments of acquittal or, in the alternative, for a new trial, relying in part on *Universal Health Services, Inc. v. United States ex rel. Escobar*, — U.S. —, 136 S. Ct. 1989 (2016), which issued after the district court had found them guilty. They contended that *Universal Health* changed the materiality standard applicable to health care fraud under § 1347 and, under the new standard, their asserted misrepresentations were not material.

The district court issued a careful opinion and order denying the motions. In that opinion and order, the court acknowledged that its opinion finding Palin and Webb guilty did not discuss materiality as an element of health care fraud. But the court explained that the misrepresentations at issue in this case were material, even assuming the standard outlined in *Universal Health* applied.

This appeal followed.

II.

A.

On appeal, the Government agrees with the defendants that materiality constitutes an element of health care fraud and conspiracy to commit health care fraud. That concession is well-advised. Section 1347 provides that it is a crime to "knowingly and willfully execute[] . . . a scheme or artifice . . . to defraud any health care benefit program" or obtain money or property from a health care benefit program "by means of false or fraudulent pretenses, representations, or promises." This language mirrors that in the longstanding federal mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), and bank fraud (§ 1344) statutes, which similarly prohibit any "scheme or artifice to defraud" or obtaining money or property "by means of false or fraudulent pretenses, representations, or promises." In *Neder v. United States*, 527 U.S. 1, 21–25 (1999), the Supreme Court held that the mail, wire, and bank fraud statutes incorporated the common-law definition of "fraud," which requires "a misrepresentation or concealment of *material* fact," meaning materiality is an implicit element of those statutes. Although *Neder* did not examine § 1347, the same analysis applies and compels the same result — materiality constitutes an element of health care fraud. *See United States v. Perry*, 757 F.3d 166, 175–76 (4th Cir. 2014).

Because materiality constitutes an element of their offenses, we must examine whether, as Palin and Webb contend, the district court erred by not expressly ruling on materiality when finding them guilty. The extent to which the court considered materiality at that stage is unclear. On one hand, as the court acknowledged in denying

5

the post-trial motions, it "did not include any reference to a materiality element" in its opinion finding Palin and Webb guilty. On the other, the court never stated in that opinion that it had concluded materiality was *not* an element of health care fraud. Moreover, its findings suggest that it viewed the misrepresentations at issue here — that the sophisticated tests were medically necessary — as material to the decision by insurers to pay for claims submitted by the Lab. For example, the district court found that Palin and Webb performed medically unnecessary tests, hid this fact from insurers, and sought payment for those tests from insurers when applicable rules prohibited the submission of claims for medically unnecessary tests.

Assuming the district court did err in failing to consider materiality expressly when assessing guilt, harmless error review applies. *See Neder*, 527 U.S. at 15 (a court reviews an omission of an element of an offense for harmless error). An error is harmless only if the reviewing court concludes beyond a reasonable doubt that the verdict would have been the same absent the error. *See id.* at 19. In the context of a bench trial, that inquiry turns on whether "it is clear that a rational fact finder would have found [the defendant] guilty absent the error." *See United States v. Poole*, 640 F.3d 114, 120 (4th Cir. 2011). Moreover, in determining if an error is harmless, a reviewing court may consider the entire record, including the trial court's discussion of its error during post-trial proceedings. *See id.*

Even if the district court failed to consider materiality when finding Palin and Webb guilty, the error was harmless. The record contains no evidence "that could rationally lead to a contrary finding with respect to that omitted element." *See United*

6

*States v. Brown*, 202 F.3d 691, 700–01 (4th Cir. 2000) (quoting *Neder*, 521 U.S. at 19) (internal quotation marks omitted). Rather, the record conclusively establishes that insurers would not have paid for the second, more sophisticated tests had they known those tests were not medically necessary. No rational fact finder could conclude otherwise.

B.

Nor does *Universal Health* compel a different conclusion. Palin and Webb maintain that *Universal Health* established a new materiality standard that applies to all criminal fraud statutes, including § 1347. *See* Appellants' Br. 15–16 (claiming *Universal Health* "overruled the old standard for materiality"). We do not believe that is so, but even if it is, that purported new standard does not assist Palin and Webb here.

In *Universal Health*, the Court considered materiality under the False Claims Act ("FCA"). The Court generally noted that, "[u]nder any understanding of the concept, materiality 'looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" 136 S. Ct. at 2002 (bracket omitted) (quoting 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 69:12 (4th ed. 2003)). It then discussed how materiality applies under a specific theory of FCA liability known as "implied false certification." *See id.* at 1195, 2003–04. In that context, the Court noted that, if the government pays a particular claim despite knowing certain requirements for payment were violated, "that is very strong evidence that those requirements are not material." *Id.* at 2003.

7

According to Palin and Webb, the Court's discussion of materiality in this specific FCA context applies here and bolsters their claims that any misrepresentations they made were not material. In short, they claim that because Palin and Webb billed insurers for the second, sophisticated tests, and because the insurers regularly paid those claims despite knowing the type of test (analyzer) and the frequency of testing (weekly), it follows that "no material misrepresentations existed." Appellants' Br. 18–19.

As an initial matter, Palin and Webb stretch *Universal Health* too far. We do not believe the Supreme Court intended to broadly "overrule" materiality standards that had previously applied in the context of criminal fraud. And we doubt the Court's examination of how materiality applies under "implied false certification" FCA cases transfers to all cases charging fraud, or even all cases charging health care fraud.

But we need not resolve today whether and how *Universal Health* may impact materiality under § 1347. As the district court concluded in denying the post-trial motions, Palin and Webb's misrepresentations were material even under the *Universal Health* standard. If materiality "looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," as provided in *Universal Health*, the misrepresentations here were material: insurers would not have paid for the sophisticated tests had they known those tests were unnecessary. In contrast to the example discussed in *Universal Health*, the insurers here did not reimburse claims despite knowing Palin and Webb sought payment for tests that Palin and Webb knew were not medically necessary. *See* 136 S. Ct. at 2003. No evidence even suggests that medical necessity was anything less than a critical prerequisite to payment.

8

III.

Palin and Webb raise three additional arguments, none of which have merit.

A.

First, they claim the district court erred in denying their motions for a new trial by failing to hear new evidence concerning materiality. Appellants' Br. 16–17. Under Fed. R. Crim. P. 33, a district court may vacate a criminal judgment and grant a new trial "if the interest of justice so requires." We review a district court's denial of a motion for a new trial for abuse of discretion, and we have noted that a court should exercise its discretion to grant a new trial "sparingly." *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985). Here, the court's holding that the misrepresentations at issue were material is amply supported by an extensive record. Accordingly, it did not abuse its discretion in refusing to order a new trial.

B.

Second, Palin and Webb claim the district court erred by convicting them on the basis of an insufficiently specific indictment. Appellants' Br. 26–28. We review the sufficiency of the indictment *de novo*; our review is heightened here because Palin and Webb objected to the indictment pre-verdict. *See United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009). "An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992). Absent a charge of "[e]very essential element of an offense," an indictment is invalid. *Id.* "When the words of a statute are

9

used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (quoting *Hamling v. United States*, 418 U.S. 87, 117–18 (1974)).

The indictment challenged here was valid. It cites the statutes that Palin and Webb were charged with violating and uses the relevant statutory language to describe the charged crimes. The indictment also sets out the facts and circumstances of the alleged offenses in sufficient detail. For instance, it alleges that Palin and Webb — not the referring doctors — decided the type of test that a patient received. It further alleges that Palin and Webb treated patients differently based on insurance status: uninsured patients received only the basic test while insured patients received both that test and a second more sophisticated and expensive test. This differentiation was not based on patient needs, the indictment adds. The indictment further asserts that Palin and Webb "required" referring physicians to order the medically unnecessary tests for insured patients and then charged insurers for those tests.

## C.

Finally, Palin and Webb claim the evidence at trial was insufficient to convict. Appellants' Br. 20–26. "We review the sufficiency of the evidence *de novo*." *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013). Our review is limited to determining whether, viewing the evidence and reasonable inferences to be drawn from it in the light most favorable to the Government, "substantial evidence" supports the

conviction. *Id.* Substantial evidence is evidence that a reasonable factfinder could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *Id.* Determinations of credibility lie within the sole province of the fact finder. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). A reviewing court will overturn a conviction only if the Government's failure is clear; we do not determine whether we are convinced of guilt beyond a reasonable doubt but only whether the evidence "could support any rational determination of guilty beyond a reasonable doubt." *Perry*, 757 F.3d at 175 (internal quotation marks and citation omitted).

With respect to sufficiency of the evidence, Palin and Webb make three principal claims. First, they claim there is "no evidence" that they "had a duty to vet medical necessity of the laboratory tests their company performed." Appellants' Reply Br. 9. In short, they claim their Lab was bound to perform drug screens ordered by referring physicians. Actually, the Government offered substantial evidence that Palin and Webb determined the frequency and type of tests ordered by referring physicians, billed insurers for sophisticated tests despite knowing they were not medically necessary, and hid from insurers the fact that they were billing for unnecessary tests. Thus, Palin and Webb's claim that they had no duty to vet medical necessity is beside the point: Palin and Webb were not following doctors' orders but rather determining what those orders would be.

Second, Palin and Webb claim there is "no evidence" they knowingly and willfully billed for medically unnecessary tests. Appellants' Reply Br. 9. Not so. Taken in the light most favorable to the Government, abundant evidence demonstrates that Palin and Webb knew the second tests — the sophisticated tests — were not medically

11

necessary but ordered them anyway to generate income for themselves. Palin and Webb (not the referring doctors) decided that insured patients would receive both the basic and the sophisticated tests while uninsured patients would receive only the basic test. Indeed, Palin and Webb concede that they did this and did so to increase their profits. *See* Appellants' Br. 3, 24 & n.10. They urged referring doctors to require more frequent testing and did not give insured patients the choice of receiving only the basic test. Insured patients received an additional test even if they agreed with the results of the initial, basic test. Palin and Webb did not bill insurers for the basic test, which suggests they did not want insurers to know that insured patients received two tests each week. The record also offers evidence that Palin and Webb knew the weekly tests ordered by at least one doctor were not even used in patient treatment.

Finally, Palin and Webb claim the Government "did not identify a single piece of evidence that showed Defendants lied, presented a false statement, omitted a material piece of information, or in any way committed a bad act." Put differently, they claim they are innocent, because they only billed for tests that were performed on real patients pursuant to a real order from a real physician. Appellants' Reply Br. 11–12. This argument simply ignores the lengthy trial record. As we explained above, considered in the light most favorable to the Government, the evidence establishes that Palin and Webb originated and executed a corrupt scheme pursuant to which they determined the frequency and type of tests ordered by referring physicians, performed and billed insurers for tests they knew were medically unnecessary, and hid the fact that the tests were unnecessary from insurers so that insurers would not reject their claims. That constitutes

12

a scheme to defraud under § 1347. *See Perry*, 757 F.3d at 176 (suggesting that, under § 1347, a scheme to defraud may center on "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information" (quoting *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000) (internal quotation marks omitted)).

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.