**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-4140

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

GREGORY GENTNER,

Defendant – Appellant.

No. 25-4165

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RICHARD BRASSER,

Defendant – Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:23-cr-00006-MOC-SCR-2; 3:23-cr-00006-MOC-SCR-1)

Argued:  March 20, 2026                                    Decided:  May 28, 2026

Before KING, WYNN, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Wynn and Judge Rushing joined.

_____

**ARGUED:**  Eric Jason Foster, LAW OFFICE OF RICK FOSTER, Asheville, North Carolina; Juan Chardiet, McLean, Virginia, for Appellants.  Jason Poole, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** S. Robert Lyons, Katie Bagley, Joseph B. Syverson, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

2

KING, Circuit Judge:

Defendants Gregory Gentner and Richard Brasser (collectively, the "defendants") were each convicted by a jury in the Western District of North Carolina in 2024 for five separate felony offenses of failing to pay over to the federal Treasury tax money withheld from employee wages, commonly known as trust-fund taxes, in violation of 26 U.S.C. § 7202.[1] On appeal, the defendants challenge various aspects of the district court's underlying proceedings, as well as the court's denial of their motion for a new trial. As explained herein, because we are satisfied to reject each of the defendants' appellate contentions, we affirm the criminal judgments.

## I.

## A.

## 1.

As background, when an employer pays the earnings of its employees, the employer is required by law to withhold certain taxes from the employees' wages. *See* 26 U.S.C. §§ 3402, 3102. The employer is obligated to then pay over those withheld taxes of its employees to the federal government. *Id.* Because employers pay over those taxes to the

---

[1] Section 7202 of Title 26 of the United States Code, which underlies each of the convictions challenged herein, provides, in relevant part, that "[a]ny person required under this title to collect . . . and pay over any tax imposed . . . who willfully fails to . . . pay over such tax shall . . . be guilty of a felony[.]" Per the Internal Revenue Code, such taxes are held in "trust for the United States" until the employer makes a federal tax payment of the withheld funds. *See* 26 U.S.C. §§ 7501(a), 3102, 3402.

Treasury on their employees' behalf, the amounts paid over are commonly referred to as "trust-fund taxes." *See* 26 U.S.C. § 7501(a) (establishing statutory requirement that such taxes "shall be held to be a special fund in trust for the United States").

Those tax obligations and the proper reporting of their payments — accomplished by the employer's submission of the trust-fund taxes to the government with an Internal Revenue Service ("IRS") form known as "Form 941" — are required to be paid by the employer quarterly. *See* 26 U.S.C. § 6011(a) (establishing that persons liable for taxes "shall make a return or statement according to the forms and regulations prescribed by the [Treasury] Secretary").[2] If an employer fails to properly pay over such trust-fund taxes as required, however, the IRS can seek both personal liability and criminal penalties against the responsible individuals.

2.

The foregoing federal tax obligations and the week-long trial of the defendants in Charlotte provide the bases of these criminal appeals.[3] The defendants were — during the relevant time periods — the two primary executives of a business named rFactr, Inc., a software company based in Charlotte. Defendant Brasser was rFactr's Chief Executive

---

[2] For tax purposes, a tax year is broken into four three-month calendar quarters. The Form 941s are due to be filed with the IRS at the end of the month that follows each tax quarter.

[3] Because the defendants are appealing their criminal convictions, we recite the facts drawn from the trial evidence in the light most favorable to the prosecution. *See United States v. Washington*, 743 F.3d 938, 940 (4th Cir. 2014) ("On appeal from a criminal conviction, we recite the facts in the light most favorable to the government.").

4

Officer, and defendant Gentner served as its Chief Operating Officer. In their respective corporate roles with that business entity, the defendants were responsible for rFactr's financial affairs, which included filing by them of the required Form 941s with the IRS, and paying over rFactr's employees' withheld trust-fund taxes to the federal government.

Over a period of several years, the defendants struggled to meet those statutory obligations. More specifically, rFactr's delinquencies in paying such trust-fund taxes began as early as 2013, prompting the IRS to interact with both defendants concerning rFactr's trust-fund tax obligations, and to also seek collection of trust-fund taxes that had been withheld by rFactr but never paid over. During that same time period, the defendants assured the IRS on multiple occasions that each of them — and thus rFactr — was seeking to become current on rFactr's withheld and unpaid trust-fund taxes, and that rFactr was in the process of retaining an outside payroll company to help handle its taxes. Nevertheless, rFactr's non-payments of its withheld trust-fund taxes continued into early 2015, when the IRS filed a tax levy against rFactr, seeking to collect the withheld but unpaid trust-fund taxes.

Even after the March 2015 IRS levy, however, the trust-fund tax debts of rFactr continued to mount, and an outside payroll company that could have assisted was never retained. During the period in 2015 that the IRS levied on rFactr's bank account, the defendants — as rFactr's responsible executives — were given multiple warnings about the consequences of non-payments of trust-fund taxes. And those warnings came from IRS officials, as well as advisors retained by rFactr itself. One of those rFactr advisors, a man named Brown, explicitly urged the defendants to make the trust-fund tax deposits with

5

the "first funds that come through the door[.]" *See* J.A. 1565.[4]  And Mr. Brown also warned each of the defendants that penalties, interest, and personal liability could attach to them in the event of continued non-payments of trust-fund taxes.  *Id.* (email from Brown to defendants emphasizing rapidly growing trust-fund tax debts of rFactr and stating to the defendants "I run the risk of sounding preachy . . . but [I] wouldn't be doing my job if I didn't make sure that you understand the potential consequences of this").

Unfortunately, those warnings from the IRS and Mr. Brown consistently fell on deaf ears.  In August 2015, Brown advised the defendants that rFactr's trust-fund tax debts to the United States had grown to approximately $300,000, prompting Brown to have concerns about his own personal liability.  Undeterred by that reality, the defendants failed to pay over any of the withheld trust-fund taxes of rFactr employees for all of 2015, and then also for the first quarter of 2016, causing the company's trust-fund tax debts to increase — and to then exceed $500,000, despite rFactr having received more than $2.4 million in revenue during that timeframe.  As a result, the IRS advised the defendants in May 2016 that it intended to again levy on rFactr's bank account for its unpaid trust-fund taxes.

Aware of the impending IRS tax levy and the potential consequences of their continued non-payments, the defendants applied in June 2016 for participation by rFactr and the defendants in what was called an IRS Voluntary Disclosure Program (the

---

[4] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

"Disclosure Program"). The Disclosure Program was created and used by the IRS to encourage taxpayers to disclose tax issues and problems that the IRS had not discovered. The explanations of the Disclosure Program by the IRS make clear to its participants that compliance with the Disclosure Program might result in criminal tax charges not being pursued by the IRS, but that there are no such guarantees.

Each of the defendants became well-versed in the Disclosure Program, in that IRS representatives and a certified public accountant ("CPA") working for rFactr explained the Disclosure Program's various requirements and advised both defendants that their acceptance into the Disclosure Program did not relieve rFactr of its trust-fund tax obligations. *See* J.A. 1572 (email from CPA working with rFactr to defendant Gentner advising that it "is imperative that rFactr be current on its current deposits"). The Disclosure Program application of rFactr to the IRS applied to each of the four tax quarters of 2015 and to the first two quarters of 2016. In its application, rFactr represented to the IRS that it was "moving its payroll process to an outside vendor" in order to "ensure continued compliance and payment . . . going forward." *Id.* at 1570.

3.

The Disclosure Program application made by rFactr was accepted by the IRS in November 2016. After making some partial trust-fund tax deposits, however, rFactr failed to pay over to the IRS more than $160,000 of the trust-fund taxes it had withheld during tax quarters that post-dated its Disclosure Program application. That is, the trust-fund taxes originating during most of 2016, through the first quarter of 2017, were not timely paid to the IRS, despite rFactr receiving more than $1.2 million in revenue during that time period.

7

Nevertheless, the defendants continued during those multiple tax quarters to be personally paid six-figure annual salaries by rFactr. *See* J.A. 558 (establishing that defendants Brasser and Gentner earned approximately $287,000 and $194,000 from rFactr in 2016, respectively).

Thereafter, in familiar fashion, IRS officials advised the defendants in the Spring and Summer of 2017 that rFactr was obliged to always be current in making its trust-fund tax payments to the IRS, notwithstanding its participation in the Disclosure Program. Indeed, defendant Gentner readily confirmed his understanding of those trust-fund tax obligations in writing, making a note in a meeting with an IRS officer in June 2017 that the "biggest thing" was to "stay current[,]" and that Gentner and Brasser "need[ed] to come up with the explanation." *See* J.A. 1873-74. In September 2017, Brasser again assured the IRS that rFactr was hiring an outside payroll company to assist with its trust-fund tax payments to the IRS. Those representations turned out to be empty promises, however, that each of the defendants made to the IRS over a period of about three years.

The IRS halted its collection efforts with respect to rFactr's unpaid trust-fund taxes when it learned, in February 2018, that rFactr had ceased all business operations. rFactr was thereafter deemed liable by the IRS for more than $200,000 in trust-fund taxes withheld and not paid over to the Treasury during five of the relevant post-Disclosure Program tax quarters. Because those taxes were yet unpaid, the IRS imposed personal liability and penalties in 2018 on both Gentner and Brasser.

Nevertheless, the defendants remained undeterred in their continuing non-compliance with their obligations to the IRS, and they yet failed to make the overdue trust-

8

fund tax payments of rFactr.  During that particular period of noncompliance, however, they had managed to fund an unrelated civil lawsuit on rFactr's behalf.  And after nominally closing its business, rFactr had actually received nearly $200,000 in payments from two of its clients.  Notably, the defendants did not use any of those funds to pay the IRS for rFactr's then unpaid and overdue trust-fund taxes.  Defendant Brasser, however, thereafter obtained other gainful employment, where he earned annual salaries exceeding $430,000, $560,000, and $740,000 in 2019, 2020, and 2021, respectively.  *See* J.A. 821-22.[5]

### B.

In January 2023, the defendants were indicted by the federal grand jury in the Western District of North Carolina.  The indictment alleged, inter alia, a recitation of the defendants' and rFactr's failures to timely pay over trust-fund taxes owed by rFactr, beginning as early as 2013.  The defendants were each charged with five felony offenses for violating 26 U.S.C. § 7202 — that is, for their willful failures to pay over rFactr's trust-fund taxes withheld for five tax quarters in 2016 and 2017.[6]

---

[5] Preparing to pursue criminal charges against the defendants with respect to rFactr's unpaid trust-fund tax debts, the United States Attorney sought to meet with the defendants in September 2021.  Before such a conference could be held, however, the defendants paid the withheld trust-fund taxes then owed by rFactr, plus penalties and interest.

[6] The defendants were each also charged with two offenses for filing false tax returns, and Brasser was charged with tax evasion.  Furthermore, the five quarters underlying the alleged felony tax offenses against the defendants for failure to pay over trust-fund taxes included the last two quarters of 2016, as well as the first, second, and fourth quarters of 2017.

In March 2024, the defendants were tried jointly in a five-day jury trial in Charlotte, and the jury heard the evidence that is summarized above. The prosecution presented 10 witnesses, including IRS officials and rFactr advisors. The defendants called two witnesses, and they each also testified. They maintained that their failures to pay over rFactr's withheld trust-fund taxes were not willful criminal offenses, explaining that they had ultimately paid the overdue taxes, and that they had each cooperated with the IRS. The defendants each conceded, however, that they knew the withheld trust-fund taxes were owed by rFactr to the United States and that they had failed to pay those taxes in a timely manner. *See* J.A. 1315 (closing statement of defendant Gentner's lawyer that the defendants "knew they had a duty to pay those taxes" and acknowledging that the defendants "didn't do it when the government wanted [the defendants] to, didn't do it when [the defendants] should" have).

In discussing the jury instructions with the trial judge during what is called the "charge conference," the defense lawyers focused on the willfulness element of each of the five felony charges, and they also emphasized the defendants' so-called "good faith" defense. The defense lawyers made other suggestions during the charge conference, however, and the court modified certain aspects of its contemplated jury instructions.

During the closing arguments, the defense lawyers emphasized contentions that their clients' failures to pay over the withheld rFactr trust-fund taxes were not criminally willful violations of the tax laws. Defendant Gentner's lawyer also asked the jury to "pay attention to the time frame in the indictment," and advised the jury that the indictment itself would be in the jury room during the jury's deliberations. *See* J.A. 1316.

10

After the closing arguments, the jury was instructed by the trial court on the applicable legal principles. At the outset, the court advised the jury that "an indictment is but a formal method of accusing the defendant of a crime. It is not evidence of any kind against the defendant nor does it permit any presumption or inference of guilt." *See* J.A. 1343. The court then instructed the jury on the term "willfulness," an essential component of each of the charges. In relevant part, the court instructed that

> willfulness means a voluntary and intentional violation of a known legal duty. In this context willfulness means that the defendant knew he had a duty to pay the taxes and voluntarily and intentionally did not pay those taxes.

*Id.* at 1358.

After explaining the meaning of "willfulness," the district court mentioned the good faith defense argued by the defense lawyers. To that end, the court explained that it would "give [the jury] the instruction on the defense of good faith" later, but that the good faith defense "would apply here also because good faith is not consistent with willfulness." *See* J.A. 1359. Then, after specifying the elements of each of the charges, the court advised the jury as follows:

> Good faith is a complete defense to the charges in the indictment. Since good faith on the part of the defendants is inconsistent with willfulness and willfulness is an essential part of all of these charges, if the defendant acted in good faith, sincerely believing himself to have acted in compliance with the laws, then the defendant did not intentionally violate a known legal duty. That is, the defendants did not act willfully.

*Id.* at 1367. The court also explained that a good faith belief can negate willfulness, "even if the defendant's belief was not objectively reasonable[,]" and that "if a person actually

11

believed that what he was doing was in accord with the tax laws, then he did not willfully make a false statement on a tax return." *Id.*

After the jury was instructed, but before the jury started to deliberate, the defendants expressed concerns — outside the jury's presence — about the good faith defense being placed by the judge towards the end of the instructions. Though the court believed that the instructions were clear that good faith applied to each charge, it recalled the jury into the courtroom and briefly instructed it further. The supplemental instruction was as follows:

> [W]illfulness applies to all the charges, and the good faith defense applies to all of the charges. They're only listed in there one time. In other words, I gave a definition of willfulness one time and a good-faith instruction one time in there. They both — each of those applies. You can read those in every section of the case. Willfulness has to be proved, and the good-faith defense is something you have to consider when you're considering willfulness.

*See* J.A. 1375. After this supplement concerning willfulness and good faith was provided to the jury, the defense lawyers did not interpose any further objections.

The jury deliberated for about four hours. By its Verdict, the defendants were each convicted of five felony offenses of failure to pay over trust-fund taxes, in violation of 26 U.S.C. § 7202.[7]

In March 2024, the defendants jointly filed a timely post-trial motion, seeking judgments of acquittal under Rule 29 of the Federal Rules of Criminal Procedure or, in the

---

[7] The Verdict on the balance of the indictment — that is, for filing false tax returns as to each defendant and tax evasion as to Brasser — was not guilty. Those results are irrelevant here, and we do not discuss them further.

12

alternative, a new trial pursuant to Rule 33.[8]  Specifically, they argued therein that the trial evidence was insufficient to sustain their convictions on the § 7202 charges.  Alternatively, the defendants asserted that they were entitled to a new trial, because the Verdict was against the great weight of the trial evidence.  By Order of August 5, 2024, the district court denied the defendants' post-trial motions.  *See United States v. Brasser*, No. 3:23-cr-00006 (W.D.N.C. August 5, 2024), ECF No. 101 (denying the defendants' Rule 33 new trial motion because the "great weight of the evidence presented at trial showed that Defendants were responsible for withholding . . . and paying trust fund taxes, and that they willfully failed to do so").

\* \* \*

In February 2025, the defendants were each sentenced to 12 months plus a single day in prison, followed by a one-year term of supervised release.  The defendants have timely appealed, and their appeals have been consolidated.  We possess jurisdiction in each of these consolidated appeals, pursuant to 28 U.S.C. § 1291.

II.

As relevant to these consolidated appeals, "[w]e review a district court's decision to give a particular jury instruction for abuse of discretion, and review whether a jury

---

[8] During the trial, the defendants had unsuccessfully moved for judgments of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, after the prosecution closed its case.  They renewed those Rule 29 motions after the Verdict was returned.  Each of those motions was denied, and the defendants do not challenge those rulings.

instruction incorrectly stated the law de novo." *See United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018) (citation modified). "In reviewing the adequacy of jury instructions, we determine whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *See United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013) (citation modified). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction seriously prejudiced the challenging party's case." *See Miltier*, 882 F.3d at 89 (citation modified). Along these lines, "[t]he submission of an indictment to the jury is a discretionary matter with the district court." *See United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986).

Furthermore, "[w]e review a district court's denial of a motion for a new trial for abuse of discretion" pursuant to Federal Rule of Criminal Procedure 33. *See United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017). In that regard, we have emphasized "that a court should exercise its discretion to grant a new trial 'sparingly.'" *Id.* at 423 (quoting *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)). As to the abuse-of-discretion standard, our Court has recognized that "a district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *See United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (citation modified); *Wudi Indus. (Shanghai) Co. v. Wong*, 70 F.4th 183, 190 (4th Cir. 2023).

14

III.

On appeal, the defendants present four assignments of error concerning the underlying proceedings of the district court.[9]  More specifically, the Defendants seek to raise three jury-related contentions:  (1) that it was error for the court to allow the jury to review the indictment during its deliberations; (2) that the instructions to the jury were "inconsistent with the IRS Voluntary Disclosure Program allowances"; and (3) that the instructions were "confusing, misleading, and prejudicial to the defense."  *See* Br. of Appellants 2.[10]

The defendants' other appellate contention is unrelated to the jury issues, and instead challenges the district court's denial of their post-trial Rule 33 motion for a new trial.  According to the defendants, the court erred in denying their Rule 33 motion because the court failed to weigh and assess their "extensive cooperation with the IRS."  *See* Br. of

---

[9] Another appellate issue identified in the defendants' opening brief — Brasser's challenge to his prison sentence — has been rendered moot.  As Brasser's lawyer acknowledged during the oral argument in Richmond, Brasser has now fully served his prison sentence.

[10] The government maintains that the defendants failed to properly preserve any of their jury-related contentions in the underlying proceedings.  That is, it contends that, by failing to properly object under Federal Rule of Criminal Procedure 30(d), those jury-related contentions are subject to plain error review only.  *See* Br. of Appellees 33-35, 45-47, 59-61.  The government is correct that unpreserved claims are "generally reviewed on appeal only for plain error."  *See United States v. Brewer*, 157 F.4th 332, 343 n.5 (4th Cir. 2025) (citation modified).  But here, "[w]e need not decide whether [the defendants] waived" their jury-related contentions — such that they would be subject to *Olano* plain error review — "because [their jury-related contentions] fail[] even under" the abuse-of-discretion standard.  *See United States v. Spirito*, 36 F.4th 191, 202 n.8 (4th Cir. 2022).

15

Appellants 39. They assert that, had the court properly done so, justice would have required the award of a new trial.

## A.

### 1.

We begin with the defendants' jury-related appellate contentions, each of which is subject to abuse of discretion review. As related previously, the defendants' first jury-related contention concerns the indictment being provided to the jurors during their deliberations. Under our precedent, a trial court possesses discretionary authority to send an indictment to a jury room. *See, e.g.*, *United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986). In that regard, we have explained that allowing the jury to review an indictment during its deliberations is not an error when "the jury is unequivocally instructed that the indictment is not evidence," and that "the indictment is distributed solely as an aid in following the court's instructions and the arguments of counsel." *Id.* (citation modified).

In this situation, the record is clear that the trial court adhered to those standards. As a threshold matter, as the able trial judge recognized, the indictment was "straightforward," told "the whole story," and was "related to the charge." *See* J.A. 1374. And critically, the jury was unambiguously instructed that the "indictment is but a formal method of accusing the defendant of a crime. It is not evidence of any kind against the defendant nor does it permit any presumption or inference of guilt." *Id.* at 1343. This emphatic instruction was actually supported by Gentner's lawyer — rather than the prosecutors or the district court — who first mentioned that the indictment would be

16

provided to the jury. As a result, the court did not abuse its discretion in that regard, and the defendants' contention about the indictment going to the jury must be rejected.

2.

Second, although they failed to object, the defendants argue that the district court's instructions were "inconsistent with the IRS Voluntary Disclosure Program allowances[.]" *See* Br. of Appellants 20. To that end, they claim that the terms of the Disclosure Program allow a participating employer to prioritize certain payments while it is resolving tax obligations, and that the jury was not properly instructed about rFactr's ability (or lack thereof) to pay its withheld and overdue trust-fund taxes when they were due.

In that regard, the jury was instructed that it could consider rFactr's ability to pay the trust-fund taxes when due, and that exercising an intentional preference for rFactr's other creditors over the United States supported a finding of willfulness within the meaning of § 7202. *See* J.A. 1358 ("You may but are not required to find that the element of willfulness has been proven by evidence of an intentional preference of other creditors over the United States."). And those instructions conform to the law in this Circuit. *See Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (explaining that an "intentional preference of other creditors over the United States is sufficient to establish the element of willfulness" with respect to failure to pay required taxes (citation modified)).

Of importance, this contention rests on a false and fatal factual premise. That is, Gentner and Brasser were only charged for five specific tax quarters, and each of those quarters *post-dated* the disclosures they made to the IRS under the Disclosure Program. Put differently, they were not charged with respect to unpaid taxes in tax quarters while

17

rFactr was in the Disclosure Program.  In these circumstances, the challenged willfulness instructions were not an abuse of discretion.

3.

Third, the defendants mount a convoluted challenge to the jury instructions as a whole, arguing that they were "confusing, misleading, and prejudicial to the defense." More specifically, the defendants maintain that the district court's willfulness instructions favored the prosecution by omitting a defense theory concerning the alleged insufficiency of rFactr funds, while also instructing the jury that it could consider the defendants' "discretionary purchases" and "intentional preference of other creditors over the United States."  From there, the defendants contend that those "errors" were compounded because the judge only once read the good faith instruction to the jury, and because that instruction suggested that it applied only to false tax return charges.  *See* J.A. 1367 (instructing that "if a person actually believed that what he was doing was in accord with the tax laws, then he did not *willfully make a false statement on a tax return*" (emphasis added)).

In these circumstances, because there was no abuse of discretion, we reject this contention of error as well.  The defendants were able to present a robust defense and testify personally about rFactr's financial struggles.  The instructions thus covered their willfulness and good faith contentions in a commendable manner.  And the "false statement on a tax return" language about which the defendants complain actually arose from the defendants' proposed instructions.  *See* J.A. 180.  As a result, that argument must fail.

The defendants' contention about the trial judge's placement of the good faith defense instruction is also not well-taken.  Under our precedent, we "do not view a single

18

instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." *See United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009). Although the judge explained the good faith defense near the end of the instructions, the court emphasized that such a defense applied to each charge. *See, e.g.*, J.A. 1367, 1375. And the court instructed the jury that "good faith is a *complete defense to the charges* of the indictment," and that a defendant does not act willfully if he "sincerely believes himself to have acted in compliance with the laws." *Id.* at 1367 (citation modified). There was also a supplemental instruction given when the defendants contested the court's handling of the good faith defense.

In these circumstances, there was no abuse of discretion, and we reject the challenges interposed concerning the instructions. Put simply, they were not confusing, misleading, or prejudicial to the defendants.

### B.

Having disposed of the jury-related contentions, we turn to the Rule 33 new trial contention. Again, "we review a district court's denial of a motion for a new trial for abuse of discretion," and a new trial will only be ordered "sparingly." *See United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017) (citation modified).

### 1.

As relevant here, Rule 33 authorizes a trial court to vacate a criminal judgment and award a new trial "if the interest of justice so requires." *See* Fed. R. Crim. P. 33(a). As our Court has recognized, however, that standard is very demanding: "When the evidence

19

weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." *See United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985); *United States v. Burfoot*, 899 F.3d 326, 340 (4th Cir. 2018).

Here, the offenses for which the defendants were convicted arise from a law that says "[a]ny person required" to "pay over any tax imposed by this title who willfully fails to . . . pay over such tax" shall be guilty of a felony and subject to criminal penalties. *See* 26 U.S.C. § 7202. To sustain their five felony convictions thereunder, the prosecution was obliged to demonstrate (1) that the defendants had a duty to withhold and pay over trust-fund taxes; and (2) that the defendants "willfully failed to perform [those] tax-related duties." *See United States v. Boccone*, 556 Fed. App'x 215, 238 (4th Cir. 2014). Here, defendants Gentner and Brasser challenge the second prong only. That is, they assert that their admitted failure to pay over the withheld trust-fund taxes of rFactr was simply not "willful."

In a similar tax prosecution case, the Supreme Court recognized that "willfulness" means the "voluntary, intentional violation of a known legal duty." *See Cheek v. United States*, 498 U.S. 192, 201 (1991) (citation modified). Applying that standard, our Court has ruled that the willfulness prong of a tax prosecution case can be established in various ways, including, for example, by evidence of the "intentional preference of other creditors over the United States," *see Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (citation modified), or by a "pattern of failing to pay over the taxes for an extended period of time," *see United States v. Lord*, 404 Fed. App'x 773, 779 (4th Cir. 2010). Put simply, the mandate established by § 7202, and the authorities developed thereunder, are clear: If

20

a taxpayer has intentionally funded other expenditures instead of his known tax obligations — even if he claims those expenditures were necessary for the survival of the business — he has acted willfully. *See, e.g.*, *United States v. Easterday*, 564 F.3d 1004, 1006 (9th Cir. 2009) ("[I]f you know that you owe taxes and you do not pay them, you have acted willfully.").

2.

Against this backdrop of controlling principles, Gentner and Brasser maintain that the trial court failed to "seriously weigh the evidence of [their] extensive cooperation with the IRS." And they argue that the court erred by collapsing its Rule 33 analysis into its reasons for denying their motions for judgments of acquittal.

This contention — again properly reviewed for abuse of discretion — is also without merit. First of all, the evidence of willfulness in failing to pay over the withheld trust-fund taxes of rFactr that the defendants collected from employees' wages was overwhelming. Gentner and Brasser were repeatedly warned about rFactr's trust-fund tax debt by the IRS and by their own personnel. And the amount of rFactr's unpaid trust-fund taxes continued to grow, even though it generated income more than sufficient to cover the tax debts.

The defendants' so-called "cooperation" in the Disclosure Program of the IRS is a red herring in that context. They failed to make trust-fund tax payments for multiple quarters *after* their alleged "cooperation" with the IRS — notwithstanding a barrage of IRS warnings that rFactr had to stay current on its tax obligations. Again, Gentner and Brasser were charged and convicted for felony offenses committed in the post-Disclosure Program tax quarters. And they each clearly understood their forward-looking obligations to the

21

Treasury and the IRS.  As one compelling example, defendant Gentner's own June 2017 IRS meeting notes confirm that the "biggest thing" was to "stay current" on rFactr's trust-fund taxes.  *See* J.A. 1874.

Although Gentner and Brasser contended that the evidence established that they were trying to make good on the unpaid tax debt to the IRS while keeping the rFactr business afloat, the jury simply found otherwise.  Under the evidence credited by the jury, Gentner and Brasser decided to pay themselves first, fund an unrelated civil lawsuit instead of paying over the taxes owed, and make payments to non-government creditors, rather than pay to the Treasury the trust-fund taxes.

As a result, we reject the defendants' contentions that the trial court "denigrated" their Rule 33 motion with its rulings on their requests for judgments of acquittal.  Put simply, the court's Rule 33 ruling adequately addressed the trial evidence and applied the proper legal standards.  As a result, the court did not abuse its discretion in denying the Rule 33 motion for a new trial.

IV.

Pursuant to the foregoing, we reject each contention of error and affirm the criminal judgments.

*AFFIRMED*

22